UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

CALICO COTTAGE, INC.,

                Plaintiff,

      v.

TNB, Inc.

                Defendant.

Civil Action No: CV11-0336 (DLI)(MDG)

**PLAINTIFF CALICO COTTAGE, INC.'S FIRST MOTION TO COMPEL DISCOVERY AND MEMORANDUM IN SUPPORT THEREOF**

Plaintiff, Calico Cottage, Inc., ("Calico") hereby moves pursuant to Fed. R. Civ. P. 37 to compel Defendant, TNB, Inc., ("TNB") to produce documents responsive to Calico's document request Nos. 4 through 11, No. 14 and Nos. 16 and 17 of Calico's First Set of Document Requests served on April 13, 2011 on the grounds set forth below.

**SUMMARY**

TNB appears to be taking the position that its interpretation of the meaning of the Agreement between the parties determines relevancy for the purpose of discovery in this action. Calico's position is that the discovery that it is seeking will help to determine the proper interpretation and scope of the Agreement, the breach of the Agreement by TNB and the appropriate legal remedy. Calico's Requests are for documents relevant to TNB's activities relating to its entry into the fudge products business and its contacts with Calico's customers in connection with fudge products. These documents are necessary to prove Calico's contentions concerning breach of contract and to provide a basis for a judicial remedy for the breach.

1

27857/002/1246184.1

**FACTUAL BACKGROUND**

This is an action for breach of contract based on TNB's violation of non-competition and non-solicitation provisions in a 2007 contract between the parties

1. **The Parties**

Calico is a New York corporation with its principal place of business in Amityville, New York. Calico is in the fudge business. It supplies equipment and pre-measured ingredients for making fudge, as well as finished fudge products, to retailers throughout the United States. Calico also supplies fudge mixes that retailers sell to consumers who wish to make their own fudge at home.

TNB is a Florida corporation with its principal place of business in Sanford, Florida and does business under the name "The Nutty Bavarian."  TNB is in the glazed nuts business. It sells glazed nuts, nut roasting and glazing equipment and ingredients for preparing glazed nuts to retailers throughout the United States.

2. **The Negotiations To Combine TNB's Business With Calico's**

In late 2006 Calico and TNB became interested in combining their businesses because of the potential synergy between Calico's fudge products and TNB's nut products, including the potential for selling TNB's nut products to Calico's fudge customers and vice versa.   Calico and TNB already had a few customers in common, but the vast majority of Calico's customers were not customers of TNB and vice versa. The negotiations lasted a few months, beginning in earnest in approximately January 2007. Since a full and frank mutual disclosure of confidential and sensitive business information, including market, sales and profitability data, was essential for the effectiveness of the negotiations, Calico and TNB entered into a contract entitled "Agreement of Non-Disclosure, Non-Use and Non-Competition" (hereinafter "the Agreement") effective January 30, 2007, a copy of which is attached as Exhibit A.  At the outset of the discussions, in

late 2006, Calico permitted TNB's president, David Brent, to tour its plant and Mr. Brent signed a separate confidentiality agreement in connection with the plant tour, wherein he agreed not to reveal or use certain trade secrets of Calico. *See* Exhibit B, "Location And/Or Plant Tour Confidentiality Agreement."

Mr. Brent initially indicated his agreement to the proposed acquisition of TNB by Calico under which Mr. Brent would have become a shareholder in Calico. But TNB ultimately decided not to proceed with the deal.

### 3. The Non-Competition Provision of The Agreement

The term of the Agreement is five years. The Agreement expires on January 30, 2012. (See Exh. A, Agreement ¶¶ 5 and 10). Paragraph 4 of the Agreement entitled "Non-Competition" provides that "each party agrees to refrain from entering into the business of the other party." The business of each party is defined in the first page of the Agreement as follows. Calico's business is defined as "the business of providing to retailers: (i) fudge making equipment, fudge making ingredients and finished fudge that enables retailers to sell fudge to consumers and (ii) make-at-home mixes that are sold by retailers to consumers." TNB's business is defined as "the business of providing to retailers: (i) nut roasting and glazing equipment and ingredients for roasting and glazing nuts that enables retailers to sell roasted and glazed nuts to consumers, and (ii) glazed nuts in bulk and prepackaged glazed nuts that are sold by retailers to consumers." The clause was designed to maintain the *status quo* for five years in the sense that neither party could enter into the other's business until the competitive information that it had learned during the negotiations had become five years out of date.

27857/002/1246184.1

4. **The Non-Solicitation Provision Of The Agreement**

Paragraph 3 of the Agreement, entitled "Non-Solicitation" provides, in relevant part, that during the term of the Agreement the parties shall not, directly or indirectly "attempt to reduce or eliminate the current business relationship of the other party with any of the other party's customers." This clause provided further assurance to each party that it could discuss a potential merger and exchange certain confidential information without danger that the other party would, in the five year following the exchange of confidential data, try to deprive it of sales to its existing customers.

5. **The Confidentiality and Non-Use Provision Of The Agreement**

Paragraph 2 of the Agreement, entitled Non-Disclosure and Non-Use of Confidential Information, provides, *inter alia*, that the parties each agree "not to use any Confidential Information disclosed to it by the other party for its own use or for any purpose" other than the merger negotiations. *See* Exh. A, Agreement ¶ 2 and third "Whereas" clause.

6. **TNB's Violation Of The Agreement**

Some of Calico's larger retail chain customers are apparently interested in having a single supplier for both nuts and fudge products. Seeking to steal a march on Calico, upon information and belief, TNB has entered into the fudge business before the expiration of the Agreement and is offering to supply both nuts and fudge products to Calico's customers and others. Calico, being bound by the Agreement, cannot compete with TNB before the expiration of the Agreement by offering its customers glazed nuts as well as fudge products and is, accordingly, in danger of losing some of its customers to TNB. For example, upon information and belief, in recent months TNB has actively sought to replace Calico as a supplier of fudge products to the Cabela's retail chain and the Bass Pro retail chain, both large customers of Calico.

### 7. The Issues In Dispute On Which Calico Seeks Discovery

The central issues in this case are (1) whether TNB has breached the non-competition clause set forth in paragraph 4 of the Agreement by entering into the business of Calico, as defined in the Agreement, during the term of the Agreement, and (2) whether TNB has breached the non-solicitation provision of paragraph 3 of the Agreement by attempting to "reduce or eliminate" the current business relationship of Calico with any customer. Calico seeks discovery on these two issues. Calico also seeks discovery directed to whether TNB has violated paragraph 2 of the Agreement or the related "Location And/Or Plant Tour Confidentiality Agreement" of Exhibit B by making use of, or disclosing to others, any business or technical information about Calico's fudge business that Mr. Brent learned from Calico during the merger discussions and his 2006 tour of Calico's plant.

In its Answer, TNB asserts as its first affirmative defense that the Agreement is unenforceable due to lack of consideration. (Answer ¶ 22). Accordingly, Calico seeks discovery as to the confidential information that TNB disclosed to Calico under the protection of the Agreement and any other benefit that TNB derived under the Agreement.

The following is a summary of some of the factual allegations in the Complaint that TNB has categorically denied. Thus, these factual allegations are in dispute and are properly the subject of discovery.

TNB denies without qualification the allegations of paragraphs 20 through 22 of the Complaint. Paragraph 20 of the Complaint, alleges, *inter alia*, that TNB has recently begun to offer fudge products as part of its product line. TNB denies this. (*See* Complaint ¶ 20 and Answer ¶15). Paragraph 21 of the Complaint alleges, *inter alia*, that TNB has offered its fudge products to Calico's customers and has demonstrated its fudge making equipment and

5

ingredients to Cabela's, a large retail chain that currently purchases fudge products from Calico. TNB also denies this. (*See* Complaint ¶ 21 and Answer ¶15).

TNB further denies that during the merger negotiations the parties met in person at each other's facilities in New York and Florida and that Calico disclosed confidential financial data to TNB. (*See* Complaint ¶ 13 and Answer ¶10).

### 8. Calico's Document Requests and TNB's Objections

Calico served its first set of document requests, a copy of which is attached as Exhibit C, on April 13, 2011. TNB responded on May 16, 2011 (*See* Exhibit D) objecting to all of the requests and stating that it will produce some responsive documents only with respect to a few of the requests. To date, TNB has failed to produce any documents at all responsive to any of Calico's document requests.

## ARGUMENT

### 1. The Standard Of Relevance Under The Federal Rules Is Broad

Under the Federal Rules of Civil Procedure, discovery is permitted "regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). Discoverability is determined by a broad standard of relevance. See *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351, 98 S. Ct. 2380, 57 L. Ed. 2d 253 (1978) (relevance standard is broad in order "to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case"); *Barrett v. City of N.Y.*, 237 F.R.D. 39, 40 (E.D.N.Y. 2006) (noting that the information sought "need not be admissible at trial to be discoverable").

The universe of relevant documents in this litigation is not particularly large since TNB has only recently started selling fudge products. The documents requests are not overbroad or

otherwise unreasonably burdensome and the requested documents bear on, or could lead to other matter that could bear on, an issue that is or may be in the case.

### 2. **TNB Should Be Ordered To Produce Documents Responding to Request Nos. 4 & 5** (documents exchanged by the parties)

Request No. 4 calls for the production of "all documents provided or disclosed to Calico by TNB." TNB refuses to produce any responsive documents, responding as follows: "TNB objects to this Request on the grounds that it seeks the production of confidential and proprietary information and calls for TNB to produce documents to Plaintiff that are already in Plaintiff's possession. TNB also reserves the right to supplement, amend or correct this response at any time."

TNB's confidentiality objection is ill-founded as to documents that are claimed to be in Calico's possession already. Moreover, the parties had agreed on the terms of a Stipulated Protective Order to facilitate the production of confidential information as of May 20, 2011. TNB's counsel eventually signed the Stipulated Protective Order on June 2, 2011 and a fully executed copy of the Stipulation signed by Calico's counsel was provided to TNB's counsel the same day and filed with the Court. Accordingly, TNB's refusal to produce documents on confidentiality grounds is baseless. Further, the documents should be produced regardless of whether TNB believes that Calico has a copy already. Calico is entitled to discover what correspondence and documents TNB has in its possession that it admits that it sent or disclosed to Calico.

Request No. 5 calls for the production of "all documents provided to TNB by Calico." TNB refuses to produce any documents, responding as follows: "TNB objects to this Request on the grounds that it is overbroad and states that all such documents, to the extent that they exist,

are in Plaintiff's possession. TNB also reserves the right to supplement, amend or correct this response at any time."

The universe of documents sent or supplied to TNB by Calico is limited. The documents are relevant to the consideration provided to TNB under the Agreement. The merger discussions lasted just a couple of months. TNB fails to explain how the request is "overbroad." Again, the documents should be produced regardless of whether TNB believes that Calico has a copy. Calico is entitled to discover what documents TNB has in its possession that it admits were provided to it by Calico.

3. **TNB Should Be Ordered To Produce Documents Responsive to Request No. 6**
   **(documents concerning the decision to terminate merger discussions)**

Request No. 6 calls for the production of "all documents concerning TNB's decision to terminate its merger discussions with Calico." TNB responded as follows: "TNB states that no such documents exist." However, in the pre-motion conference between counsel, it emerged that TNB had interpreted this request narrowly to cover only internal communications at TNB. TNB's counsel recently conceded that there was no such limitation in the document request and orally agreed to make further enquiries about the existence of responsive documents. Regardless of whether TNB eventually supplements its response, TNB's initial unjustifiably narrow interpretation of this request is troubling and tends to indicate that TNB is not taking its discovery obligations seriously. Accordingly, TNB should be ordered to conduct a thorough search of its records, including digital files, for responsive documents.

4. **TNB Should Be Ordered To Produce Documents Responsive To Requests Nos. 7-9**

   **(documents concerning TNB's preparations to make/sell fudge products and Country Fresh/R. Michael Wood)**

Request No. 7 requests the production of "all documents concerning any preparations by TNB to make or sell Fudge Products." TNB refused to produce any responsive documents, responding as follows: "TNB objects to this Request on the grounds that it is ambiguous and overbroad. TNB also reserves the right to supplement, amend or correct this response at any time." Under paragraph 4 of the Agreement TNB agreed not to enter the business of providing to retailers (i) fudge making equipment, fudge making ingredients and finished fudge that enables retailers to sell fudge to consumers and (ii) make-at-home mixes that are sold by retailers to consumers. See Exh. A, Agreement ¶ 4 and first "Whereas" clause.

The requested documents have a direct bearing on the issue of whether TNB has entered the fudge products business in violation of paragraph 4 of the Agreement. The requested documents also bear on the issue of whether TNB is using any confidential Calico manufacturing or business information that Mr. Brent learned from Calico during his tour of Calico's manufacturing facility or during the parties' exchange of confidential business data. Such a use of Calico information by TNB would violate paragraph 2 of the Agreement wherein the parties agreed not to use confidential information disclosed under the Agreement for any purpose other than the merger negotiations. See Exh. A, Agreement ¶ 2 and third "Whereas" clause. Use by TNB of Calico's manufacturing trade secrets would also violate the "Location And/Or Plant Tour Confidentiality Agreement" of Exhibit B. Since TNB regards the Agreement as a nullity it is more than possible that TNB believes that it is free to use any information that it learned from Calico during the merger discussions and Mr. Brent's tour of Calico's plant.

9

TNB has not explained how the request is overbroad or ambiguous and has not offered to produce any reasonably responsive documents. Given that the universe of documents is limited and that the documents have a direct bearing on the key issues of whether TNB has entered the fudge products business and has used Calico confidential information in its manufacturing or business plans, TNB should be compelled to produce documents responsive to request No. 7.

Request No. 8 calls for the production of "all documents concerning Country Fresh." TNB has refused to produce any responsive documents, responding as follows: "TNB objects to this request on the grounds that it is irrelevant, not reasonably calculated to lead to the discovery of admissible evidence and attempts to impose duties far beyond what the Federal Rules of Civil Procedure require."

"Country Fresh" refers to Country Fresh Food & Confections Inc., a company that makes and sells fudge. On information and belief, TNB tried to purchase Country Fresh as part of TNB's preparation for entering the fudge products business. On information and belief, TNB discussed its entry into the fudge products business with Country Fresh as well as the impact of the Agreement on TNB's plans. TNB's documents concerning Country Fresh are relevant for the same reasons stated above with respect to request No. 7.

Request No. 9 calls for the production of "all documents concerning the hiring of R. Michael Wood by TNB." TNB has refused to produce any responsive documents, responding as follows: "TNB objects to this request on the grounds that it is irrelevant, not reasonably calculated to lead to the discovery of admissible evidence and attempts to impose duties far beyond what the Federal Rules of Civil Procedure require." On information and belief, Mr. Wood is a former Country Fresh manager hired to be in charge of TNB's fudge manufacturing.

27857/002/1246184.1

TNB's documents concerning the hiring of Mr. Wood are relevant for the same reasons stated above with respect to request No. 7.

5. **TNB Should Be Ordered To Produce Documents Responsive Requests Nos. 10 & 11** (documents concerning TNB's offers to sell and its tests of fudge products)

Request No. 10 calls for the production of "all documents concerning any offer(s) to sell Fudge Products by TNB." TNB has refused to produce any responsive documents, responding as follows: "TNB objects to this request on the grounds that it is irrelevant, not reasonably calculated to lead to the discovery of admissible evidence and attempts to impose duties far beyond what the Federal Rules of Civil Procedure require." Under paragraph 4 of the Agreement TNB agreed to refrain from entering into the fudge products business during the term of the Agreement. Accordingly, TNB's offers to sell fudge products are directly relevant. These documents are also relevant to TNB's breach of paragraph 3 of the Agreement which prohibits TNB from attempting to reduce Calico's current business relationship with Calico's customers during the term of the Agreement.

Request No. 11 is directed to "all documents concerning any tests of Fudge Products conducted by TNB." TNB has refused to produce any responsive documents, responding as follows: "TNB objects to this request on the grounds that it is irrelevant, not reasonably calculated to lead to the discovery of admissible evidence and attempts to impose duties far beyond what the Federal Rules of Civil Procedure require."

TNB's tests of fudge products both in-house and at customer stores are relevant to TNB's entry into the fudge products business in violation of paragraph 4 of the Agreement. TNB's tests of fudge products at Cabela's stores and at the stores of other Calico customers are also directly relevant to TNB's violation of paragraph 3 of the Agreement which prohibits TNB from

11

attempting to reduce or eliminate Calico's current business relationship with its customers during the term of the Agreement.

6. **TNB Should Be Ordered To Produce Documents Responsive To Request No. 14 (documents sufficient to identify customers to whom TNB has offered fudge products and the type of product offered)**

Request No. 14 requests the production of "documents sufficient to identify any customer to whom TNB has offered Fudge Products and the type of product offered to each identified customer." TNB has refused to produce any responsive documents, responding as follows: "TNB objects to this request on the grounds that it is irrelevant, not reasonably calculated to lead to the discovery of admissible evidence and attempts to impose duties far beyond what the Federal Rules of Civil Procedure require."

The requested documents are directly relevant to TNB's entry into the fudge products business in violation of paragraph 4 of the Agreement. TNB's offers to sell fudge products to Cabela's, Bass Pro and other customers of Calico are relevant to TNB's violation of paragraph 3 of the Agreement which prohibits TNB from attempting to reduce or eliminate Calico's current business relationship with its customers during the term of the Agreement.

7. **TNB Should Be Ordered To Produce Documents Responsive To Requests No. 16-17 (documents concerning communications between TNB and Cabela's concerning Calico, or Fudge Products)**

Request No. 16 is directed to "all documents concerning communications, including emails, between TNB and Cabela's concerning Calico." TNB has refused to produce any responsive documents, responding as follows: "TNB objects to this request on the grounds that it is overbroad, irrelevant, not reasonably calculated to lead to the discovery of admissible evidence and attempts to impose duties far beyond what the Federal Rules of Civil Procedure require."

TNB's communications with Cabela's, a significant customer of Calico's, concerning Calico are relevant to TNB's violation of paragraphs 3 and 4 of the Agreement. TNB does not explain how this request is overbroad. Calico is in the fudge products business. TNB cannot have any reason to communicate with Cabela's concerning Calico except in connection with fudge products or related products or in connection with the Agreement.

Request No. 17 is directed to "all documents concerning communications, including emails, between TNB and Cabela's concerning Fudge Products."   TNB has refused to produce any responsive documents, responding as follows: "TNB objects to this request on the grounds that it is overbroad, irrelevant, not reasonably calculated to lead to the discovery of admissible evidence and attempts to impose duties far beyond what the Federal Rules of Civil Procedure require."   Again, the requested documents are relevant to TNB's violation of paragraphs 3 and 4 of the Agreement.  TNB's communications with Cabela's concerning fudge products are likely to be probative of TNB's attempt to reduce or eliminate the current business relationship of the Calico with Cabela's in violation of paragraph 3 of the Agreement.

13

## CONCLUSION

For the above-stated reasons, it is respectfully requested that the Court order TNB to conduct a complete and thorough search of its files, both hard copy and digital, for documents responsive to request Nos. 4 through 11, No. 14 and Nos. 16 and 17 in Calico's First Request For The Production of Documents and Things under the supervision of TNB's counsel and to produce the responsive documents within 10 days of the Court's Order. A Proposed Order to this effect is filed herewith.

Dated: June 7, 2011  
New York, New York

Respectfully submitted

COWAN, LIEBOWITZ & LATMAN, P.C.

By: /s/ Catriona M. Collins  
Lloyd McAulay (LM6839), lmc@cll.com  
Catriona M. Collins (CC9740), cmc@cll.com  
1133 Avenue of the Americas  
New York, New York 10036-6799  
(212) 790-9200  
Attorneys for Plaintiff

27857/002/1246184.1