UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
CALICO COTTAGE, INC.,                       Civ. No. CV11-0336 (DLI)(MDG)

                Plaintiff,            **AFFIRMATION**

    -against-

TNB, INC.

                Defendant.
-----------------------------------------------------------------X

      Douglas Levine, an attorney duly admitted to practice law in the Courts of the State of New York, hereby affirms as follows:

      1.    I am associated with Meltzer, Lippe, Goldstein & Breitstone, LLP, attorneys for Defendant TNB, Inc. ("TNB") in the above-captioned action. I submit this Affirmation in Opposition to Plaintiff Calico Cottage, Inc.'s ("Plaintiff") Motion to Compel Discovery.

## PRELIMINARY STATEMENT

      2.    The subject Motion to Compel Discovery filed by Plaintiff exemplifies a pattern of unacceptable overreaching that Plaintiff has engaged in to prevent fair competition. Plaintiff's overreaching began when it sought to use brief discussions between Plaintiff and TNB and an Agreement of Non-Disclosure, Non-Use and Non-Competition, which the parties signed more than four years ago on January 22, 2007 ("Subject Agreement") to bar TNB's entry into the fudge industry for a five year period in an unlimited geographic scope. Since Plaintiff's application for a preliminary injunction in that regard was denied, Plaintiff now continues to overreach by using the discovery rules set forth in the Federal Rules of Civil Procedure ("FRCP") to seek examination of any and all records of TNB that Plaintiff desires, regardless of its relevance to this action. In doing so, Plaintiff appears to believe that the discovery rules have

no limits. In addition to seeking documents that have nothing to do with its claim that TNB breached the non-compete and non-solicitation provisions of the Subject Agreement, Plaintiff also introduces new facts and a new agreement in the subject motion and tries to use the new agreement and new allegations to justify the relevancy of its Document Requests.

3. Specifically, Plaintiff introduces an alleged Location And/Or Plant Tour Confidentiality Agreement ("Tour Agreement") not mentioned in Plaintiff's January 21, 2011 Complaint ("Complaint"), claiming that certain documents it seeks are relevant to new allegations that TNB breached this agreement as well. Plaintiff also seeks documents that TNB has already agreed to provide in accordance with telephone conferences between counsel for the parties aimed at resolving this discovery dispute. Respectfully, this Court cannot permit Plaintiff to abuse the purpose of the FRCP's discovery rules by serving extremely broad discovery requests that Plaintiff refuses to tailor to the claims and defenses raised in this action as it is required to do under Rule 26 (b) of the FRCP. See FED. R. CIV. P. 26 (b). Accordingly, this Court should deny Plaintiff's motion in its entirety or, alternatively, require Plaintiff to serve new Document Requests that comply with Rule 26 (b) of the FRCP.

## BACKGROUND

4. The underlying action arises from failed discussions between Plaintiff and TNB in January of 2007 concerning a potential merger of their businesses. TNB is in the business of selling nut roasting and glazing equipment, ingredients and glazed nuts to retailers. According to the Subject Agreement, Plaintiff "is in the business of providing to retailers: (i) fudge making equipment, fudge making ingredients and finished fudge that enables retailers to sell fudge to customers and (ii) make-at-home mixes that are sold by retailers to consumers." See Subject Agreement, page 1, Whereas Clause 1.

545986-1 2

5.  On January 22, 2007, during their preliminary merger discussions, the parties signed the Subject Agreement in anticipation of a sale of TNB to Plaintiff, with correlating anticipated disclosure of Plaintiff's confidential information including customer lists, lists of Plaintiff's contacts in the industry, Plaintiff's recipes for its fudge products and Plaintiff's supplier list. The Subject Agreement restricts the parties' use of this confidential information, stating that "[t]he parties agree not to use any Confidential Information disclosed to it by the other party for its own use or for any purpose other than that related to" the sale of TNB to Plaintiff. See Subject Agreement, pages 2-3. However, the sale of TNB to Plaintiff was never consummated **and Plaintiff never disclosed any confidential information to TNB**. Tellingly, the Complaint does not even allege that TNB breached the Subject Agreement's provisions prohibiting TNB's use of alleged confidential information that it received from Plaintiff for any purpose other than in connection with the contemplated sale.

6.  Instead, the Complaint focuses on the alleged non-compete and non-solicitation provisions of the Subject Agreement, claiming that TNB breached these provisions by entering the fudge industry and offering fudge products to Plaintiff's customers during the five year term of the Subject Agreement. See Complaint ¶¶ 20-21 and 24-28. However, the restrictive covenants that Plaintiff relies upon are unenforceable because (1) they are not supported by valid consideration, (2) they are overbroad and unreasonable in time and in geographic scope, (3) they do not protect a legitimate business interest and (4) they are ambiguous.

7.  As TNB explained in its opposition to Plaintiff's application for a preliminary injunction, the restrictive covenants are devoid of consideration because the expressly contemplated consideration for TNB's purported promise not to enter into Plaintiff's industry and to refrain from soliciting any of Plaintiff's customers was Plaintiff's agreement to disclose

confidential business information, including Plaintiff's ingredients and customer lists, **as a part of the sale of TNB to Plaintiff.** See Subject Agreement, page 1, Whereas Clause 4. As set forth supra, the sale of TNB to Plaintiff never occurred and Plaintiff never disclosed any confidential information to TNB. Thus, TNB received absolutely nothing in consideration for its purported promise to refrain from entering the entire fudge industry and from soliciting Plaintiff's customers for an extensive five year period.

8.  For similar reasons, the restrictive covenants do not protect a legitimate business interest. The legitimate business interest proffered by Plaintiff in its Memorandum of Law submitted in support of its application for a preliminary injunction, is its interest in protecting Plaintiff from the harm it will allegedly incur from TNB's expansion into the fudge industry with "confidential market, sales, forecasting, profitability data and analyses shared with TNB during the merger negotiations [that] is still recent enough to give TNB a competitive advantage". Plaintiff also explains, in the Declaration of Ronald Beilin, also submitted in support of its preliminary injunction application, that the restrictive covenants were "designed to maintain the status quo for five years in the sense that neither party could expand into the other's market **until the valuable competitive information that it had learned during the negotiations had become five years out of date**" (emphasis added). However, TNB did not learn any competitive information during the negotiations that TNB can now use to unfairly compete against Plaintiff in the fudge industry. Accordingly, Plaintiff's own stated legitimate business purpose behind its broad proposed injunction has been rendered moot.

9.  The restrictive covenants are overbroad and unreasonable in time and in geographic scope because they apply worldwide and extend for five years; two factors that have rendered restrictive covenants void under New York law. See AM Medica Communications

Group v. Kilgallen, 90 F. App'x. 10, 11-12 (2d Cir. 2003); Garfinkle v. Pfizer, Inc., 162 A.D.2d 197, 556 N.Y.S.2d 322, 322-23 (1st Dep't 1990); Edward Weiss Adver. Agency, Inc. v. Weiss, 25 A.D.2d 633, 633, 268 N.Y.S.2d 69, 69 (1st Dep't 1966). Finally, the restrictive covenants are ambiguous because they purport to bar TNB from entering into an industry that is not clearly defined and from soliciting customers without clearly setting forth what constitutes a solicitation. Specifically, the non-compete provision states that "[e]ach party agrees to refrain from entering into the business of the other party" and defines Plaintiff's industry as the business of "providing to retailers: (i) fudge making equipment, fudge making ingredients and finished fudge that enables retailers to sell fudge to customers and (ii) make-at-home mixes that are sold by retailers to consumers". See Subject Agreement, page 1, Whereas Clause 1, page 5, ¶4. This ambiguous definition does not clearly indicate whether TNB can sell any ingredient used to make both fudge and non-fudge products and whether the prohibition applies only to retailers or the entire fudge industry. The non-solicitation provision states, in relevant part, that "[d]uring the term of this Agreement, the parties shall not, directly or indirectly…attempt to reduce or eliminate the current business relationship of the other party with any of the other party's customers." See Subject Agreement, page 4, ¶3. Defining a solicitation as an attempt to reduce or eliminate a current business relationship is extremely broad and does not provide clear guidance on what exactly constitutes a solicitation.

10. In light of the foregoing, TNB opposed Plaintiff's application for a preliminary injunction and maintained its current position that the restrictive covenants of the Subject Agreement are unenforceable. This Court denied Plaintiff's application due to a failure to establish irreparable harm and the parties proceeded with discovery. Unfortunately, Plaintiff's

overreaching tactics have continued to mar this litigation during the discovery process and have prompted the subject motion.

## THE DISPUTED DOCUMENT REQUESTS

11. Rule 26 (b) of the FRCP states, in relevant part, that parties to an action "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense". FED. R. CIV. P. 26 (b). Plaintiff ignores this rule by requesting documents that are irrelevant to Plaintiff's claim that TNB breached the non-compete and non-solicitation provisions of the Subject Agreement. Instead, Plaintiff seeks to use the FRCP discovery rules to obtain unfettered examination of all records of TNB that Plaintiff would like to see. Plaintiff also asks this Court to order TNB to produce documents that TNB has already agreed to produce. Plaintiff even goes so far as to allege, in the subject motion, that a new agreement not previously mentioned in the Complaint was breached by TNB and seeks discovery that Plaintiff believes is relevant to that claim as well. Plaintiff's actions and refusal to comply with the requirements of the FRCP should not be countenanced by this Court and the subject motion to compel should be denied in its entirety.

### Request Number 4

12. Request Number 4 seeks all documents provided or disclosed to Calico by TNB. TNB objected to this Request on the grounds that it seeks the production of confidential and proprietary information and calls for the production of documents that are already in the possession of Plaintiff. Some of the confidential documents previously disclosed to Plaintiff include tax returns and other confidential financial business information. Since these sensitive documents are currently in Plaintiff's possession, this second request for the same confidential information appears to be a harassment tactic, aimed at compelling TNB to repeatedly disclose

545986-1                                6

private business information. This request exemplifies Plaintiff's litigation strategy to have this action loom over TNB's business operations years after TNB signed the Subject Agreement. TNB should not be required to produce these documents for a second time and this Court should, accordingly, deny Plaintiff's motion to compel TNB's production of documents responsive to Request Number 4.

### Request Number 5

13. Request Number 5 seeks all documents provided to TNB by Calico. TNB objected to this Request on the grounds that it is overbroad, while affirmatively stating that all such documents, to the extent that they exist, are in Plaintiff's possession. As is the case with nearly all of Plaintiff's Requests, this Request is not limited in time or in scope to encompass only documents that are relevant to Plaintiff's claim or TNB's defenses. Nevertheless, since asserting its objections, TNB has agreed to provide responsive relevant documents that are limited in time to the term of the Agreement. Plaintiff should have mentioned this in its motion to compel to avoid unnecessary dispute resolution by this Court. A ruling from this Court is, accordingly, not required on this issue.

### Request Number 6

14. Request Number 6 seeks all documents concerning TNB's decision to terminate its merger discussions with Plaintiff. As I explained to Plaintiff's counsel in telephone conferences designed to resolve this discovery dispute, the language of this Document Request seemed to seek documents concerning TNB's internal company discussions regarding the termination. Since there were no such documents, TNB responded that no such documents exist. Counsel for the parties have subsequently cleared up this confusion and TNB has agreed to provide the documents requested. The fact that Plaintiff nevertheless requests an order from this

Court directing TNB to conduct a thorough search of its records, including digital files, for responsive documents demonstrates Plaintiff's unwillingness to resolve discovery disputes amicably and to refrain from wasting this Court's time. TNB will provide these documents and nothing further is required from the Court on this issue.

### Request Number 7

15. Request Number 7 seeks all documents concerning preparations by TNB to make or sell fudge products. TNB objected on the grounds that this Request is overbroad and ambiguous. The Complaint alleges a breach of the non-compete provision of the Subject Agreement, which prohibits each party from **entering** the business of the other during the term of the Subject Agreement, not from **preparing** to enter the other's business. See Subject Agreement, page 5, ¶4. Assuming that this non-compete provision is enforceable, documents concerning TNB's **preparation** to make or sell fudge products are not relevant to Plaintiff's breach of contract claims.

16. Plaintiff also claims that documents concerning TNB's preparation to make or sell fudge bear on the issue of whether TNB breached the Subject Agreement or the Tour Agreement by using any confidential information allegedly learned during a tour of Plaintiff's facilities or during the alleged exchange of confidential information in the parties' merger discussions for any purpose other than the sale of Plaintiff to TNB. First, neither the Tour Agreement nor TNB's alleged breach of that agreement are set forth in the Complaint, so any documents requested in that regard cannot be relevant to Plaintiff's claims. Second, as discussed supra, the Complaint does not allege that TNB breached the Subject Agreement's provisions that prohibit TNB from using any alleged confidential information that it received from Plaintiff for any purpose other than the sale of TNB to Plaintiff. The Complaint only alleges a breach of the non-

compete and non-solicitation provisions of the Subject Agreement and a request for documents relevant to an alleged breach of other provisions not mentioned in the Complaint is not relevant to this action. Third, as set forth supra and in TNB's opposition to Plaintiff's application for a preliminary injunction, Plaintiff did not disclose any confidential information that TNB can use to compete with Plaintiff. Consequently, this Court should deny Plaintiff's motion to compel TNB's production of documents responsive to Request Number 7.

### Request Number 8

17. Request Number 8 seeks all documents concerning Country Fresh. TNB objected to this request on the grounds that it is irrelevant, not reasonably calculated to lead to the discovery of admissible evidence and attempts to impose duties far beyond what the FRCP require. This request could not be more broad and seeks documents that could not be relevant to Plaintiff's claims or TNB's defenses in this action. It is unlimited in time and in scope. I asked counsel for Plaintiff to tailor this Request to this action and to draft the Request with some degree of particularity. Plaintiff's counsel refused.

18. Plaintiff cannot simply assume that all documents concerning Country Fresh are relevant to this action and its refusal to limit its Request to documents relevant to this action demonstrates that it will not correct its overreaching even after it is brought to Plaintiff's attention. TNB is entitled to communicate generally with Country Fresh and Plaintiff cannot use the FRCP's discovery rules to seek unfettered disclosure of every communication between TNB and Country Fresh. Furthermore, even if we assumed the truth of Plaintiff's allegation, made upon information and belief, that TNB discussed (1) purchasing Country Fresh in preparation for its entry into the fudge industry and (2) the Subject Agreement's impact on that plan, preparations to enter the industry do not breach the non-compete and non-solicitation provisions

of the Agreement. Thus, not only is Plaintiff not entitled to review the broad category of all documents concerning Country Fresh, but Plaintiff also has no right to review all documents concerning communications between Country Fresh and TNB regarding TNB's preparations to enter the fudge business. Accordingly, this Court should deny Plaintiff's request to compel TNB's production of documents responsive to Request Number 8.

### Request Number 9

19. Request Number 9 seeks all documents concerning the hiring of R. Michael Wood by TNB. TNB objected to this request on the grounds that it is irrelevant, not reasonably calculated to lead to the discovery of admissible evidence and attempts to impose duties far beyond what the FRCP require. TNB justifies the relevancy of this Request by claiming that Mr. Wood is a former Country Fresh manager hired by TNB to be in charge of its fudge manufacturing program and that documents concerning his hiring are relevant to TNB's preparations to enter the fudge industry. These documents concerning TNB's alleged preparations to enter the fudge industry are not relevant for the same reasons that documents responsive to Request Numbers 7 and 8 are wholly irrelevant to this action. Therefore, TNB requests that this Court deny Plaintiff's application to compel TNB's production of documents responsive to Request Number 9.

### Request Number 10

20. Request Number 10 seeks all documents concerning any offer to sell Fudge Products by TNB. TNB objected to this Request on the grounds that is irrelevant, not reasonably calculated to lead to the discovery of admissible evidence and attempts to impose duties far beyond what the FRCP require. This Request is, once again, not limited in time or scope. Even if the Subject Agreement is enforceable and this Court accepts Plaintiff's argument that TNB is

545986-1                                    10

prohibited from selling fudge products during the term of the Subject Agreement, that term expires in less than a year on January 22, 2012. Any offers by TNB to sell fudge after the expiration of the term of the Subject Agreement do not violate its terms and are irrelevant to this action. In addition, offers by TNB to sell fudge to purchasers that are not customers of Plaintiff are not prohibited by the non-solicitation provision of the Subject Agreement. Unfortunately, Plaintiff's Request seeks all of the aforementioned irrelevant documents. Since Plaintiff's counsel has refused to modify this Request and limit it in time and in scope, it violates Rule 26 (b) of the FRCP, thereby requiring this Court's denial of Plaintiff's motion to compel TNB's production of documents responsive to Request Number 10.

### Request Number 11

21. Request Number 11 seeks all documents concerning any tests of Fudge Products conducted by TNB. TNB objected to this Request on the grounds that is irrelevant, not reasonably calculated to lead to the discovery of admissible evidence and attempts to impose duties far beyond what the FRCP require. Once again, as explained in further detail above, the non-compete and non-solicitation provisions of the Subject Agreement do not prohibit TNB's preparations to enter the fudge industry. Thus, a Request for all documents concerning tests of Fudge Products by TNB or other preparations to enter the fudge industry are irrelevant to this action unless modified. Since this modification is not forthcoming, this Court should deny Plaintiff's motion to compel TNB's production of documents responsive to Request Number 10.

### Request Number 14

22. Request Number 14 seeks all documents sufficient to identify any customer to whom TNB has offered Fudge Products and the type of product offered to each identified customer. TNB objected to this Request on the grounds that is irrelevant, not reasonably

calculated to lead to the discovery of admissible evidence and attempts to impose duties far beyond what the FRCP require. Like most of the Requests discussed supra, this Request as it is currently written seeks documents concerning offers by TNB to sell fudge after the expiration of the Subject Agreement which, even under Plaintiff's theory, is not prohibited by the restrictive covenants at issue in this case. This Request also improperly seeks documents evidencing offers by TNB to sell fudge to purchasers that are not customers of Plaintiff; offers which do not violate the terms of the non-solicitation provision of the Subject Agreement. As was the case with each of the other Requests at issue here, Plaintiff refused to modify this Request and limit it to the time period and scope relevant to its claims at issue in this action. Accordingly, TNB requests that this Court deny Plaintiff's motion to compel TNB's production of documents responsive to Request Number 14.

### Request Number 16

23. Request Number 16 seeks all documents concerning communications, including emails, between TNB and Cabela's concerning Plaintiff. TNB objected to this Request on the grounds that is irrelevant, not reasonably calculated to lead to the discovery of admissible evidence and attempts to impose duties far beyond what the FRCP require. Plaintiff's Complaint specifically alleges that TNB breached the non-compete and non-solicitation provisions of the Subject Agreement by offering to sell fudge products to Plaintiff's customers during the term of the Subject Agreement. Request Number 16, however, does not seek documents relevant to this claim. Instead, Request Number 16 seeks all communications between TNB and Cabela's (an alleged customer of Plaintiff) regarding Plaintiff, whether or not the communications concern the solicitations complained of in the Complaint. Although Plaintiff refuses to admit it, TNB can talk to Cabela's about Plaintiff without soliciting Cabela's and without violating either of the

restrictive covenants of the Subject Agreement. Furthermore, like each of the other Requests, this Request is not limited in time to the term of the Agreement. Plaintiff's counsel refused to revise this Request so that TNB can respond accordingly. Consequently, this Court should deny Plaintiff's motion to compel TNB's production of documents responsive to Request Number 16.

### Request Number 17

24. Request Number 17 seeks TNB's production of all documents concerning communications, including emails, between TNB and Cabela's concerning Fudge Products. TNB objected to this Request on the grounds that is irrelevant, not reasonably calculated to lead to the discovery of admissible evidence and attempts to impose duties far beyond what the FRCP require. Once again, TNB can speak with Cabela's concerning fudge products without soliciting Cabela's or entering the fudge industry. A conversation between TNB and Cabela's concerning Fudge Products in general does not breach the Subject Agreement and is irrelevant to Plaintiff's breach of contract claim. Equally irrelevant is a conversation between Cabela's and TNB concerning potential sales of fudge products by TNB after the term of the Agreement. Since Request Number 17 as currently written demands disclosure of these irrelevant documents, Plaintiff's motion to compel all documents responsive to this Request must be denied.

### CONCLUSION

25. In short, it is time for Plaintiff's overreaching to stop. It began when Plaintiff sought to use preliminary discussions between the parties and the Subject Agreement to bar TNB from an entire industry for a five year period in an unlimited geographic scope. It has continued with Plaintiff's refusal to limit its Document Requests to only seek documents relevant to the claims or defenses of this action. Consequently, for the reasons set forth above, TNB

respectfully requests that this Court deny Plaintiff's motion in its entirety or, alternatively, require Plaintiff to serve new document requests that comply with Rule 26 (b) of the FRCP.

**WHEREFORE**, TNB respectfully submits that Plaintiff's Motion to Compel Discovery be denied in its entirety and that this Court grant such other and further relief as it deems just and proper.

Dated: Mineola, New York
      June 14, 2011

                                                  **DOUGLAS LEVINE, ESQ.**