UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

CALICO COTTAGE, INC.,

                Plaintiff,

    v.

TNB, INC.

                Defendant.

Civil Action No: CV11-0336 (DLI)(MDG)

**PLAINTIFF CALICO COTTAGE, INC.'S  OPPOSITION TO DEFENDANT'S
MOTION FOR LEAVE TO AMEND ITS ANSWER AND REOPEN FACT DISCOVERY**

27857/002/1266018.1

**Table of Contents**

Page

INTRODUCTION ...................................................................................................................2

FACTUAL BACKGROUND .................................................................................................3

    1. The Parties .................................................................................................................3

    2. The Background To The Contract And The Complaint ..........................................4

    3. The Provisions of The Agreement Relevant To The Subject Motion .....................5

    4. Procedural Background And Status Of Discovery ..................................................6

ARGUMENT............................................................................................................................7

    A. Under Rule 16(b) TNB Is Required To Show "Good Cause"
To Amend Its Pleadings...........................................................................................7

    B. The Standard For Pleading Defenses and Counterclaims Requires
Pleaded Facts That Support An Inference Of The Alleged Wrongdoing ................8

    C. Futile Amendments Are Not Permitted ...................................................................9

    D. TNB's Proposed Fifth Affirmative Defense Is Futile Under Rule 12(f) .................9

    E. TNB's Proposed Sixth Affirmative Defense Is Futile Under Rule 12(f)...............12

    F. TNB's Proposed Third Counterclaim Is Futile Under Rule 12(b)(6) ....................12

    G. TNB's Proposed Second And Third Counterclaims
Under The Lanham Act Belong In A Separate Action ..........................................14

CONCLUSION......................................................................................................................16

## Table of Authorities

Page(s)

**CASES**

*Achtman v. Kirby, McInerney & Squire, LLP,*
 464 F.3d 328 (2d Cir. 2006) ................................................................................................... 8

*Ashcroft v. Iqbal,*
 129 S. Ct. 1937 (2009) ............................................................................................... 8, 13, 14

*Aspex Eyewear, Inc. v. Clariti Eyewear, Inc.,*
 531 F. Supp. 2d 620 (S.D.N.Y. 2008) ..................................................................................... 8

*Bell Atl. Corp. v. Twombly,*
 550 U.S. 544 ............................................................................................................................ 8

*DeRosa v. Nat'l Envelope Corp.,*
 595 F.3d 99 (2d Cir. 2010) .................................................................................................... 10

*DGM Invs., Inc. v. N.Y. Futures Exch., Inc.,*
 2004 U.S. Dist. LEXIS 5136 (S.D.N.Y. 2004) ....................................................................... 9

*FDIC v. Eckert Seamans Cherin & Mellott,*
 754 F. Supp. 22 (E.D.N.Y. 1990) ........................................................................................... 9

*Grochowski v. Phoenix Constr.,*
 318 F.3d 80 (2d Cir. 2003) ...................................................................................................... 7

*Harriman v. United States,*
 2004 U.S. Dist. LEXIS 9713 (E.D.N.Y. 2004) ....................................................................... 7

*Health-Chem Corp. v. Baker,*
 915 F.2d 805 (2d Cir. 1990) .................................................................................................... 9

*Lucente v. IBM,*
 310 F.3d 243 (2d Cir. 2002) .................................................................................................... 9

*Nat'l Acceptance Co. of Am. V. Regal Prods., Inc.*
 155 F.R.D. 631 (E.D. Wis. 1994) ........................................................................................... 8

*New Hampshire v. Maine,*
 532 U.S. 742 (S. Ct. 1808, 149 L. Ed 2d 968 (2001) ........................................................... 10

*Parker v. Columbia Pictures Indus.,*
 204 F.3d 326 (2d Cir. 2000) .................................................................................................... 7

27857/002/1266018.1

*Shechter v. Comptroller of New York*,
 79 F.3d 265 (2d Cir. 1996)..................................................................................8, 10, 11

*Specialty Minerals, Inc. v. Pluess-Staufer AG*,
 395 F. Supp. 2d 109 (S.D.N.Y. 2005)................................................................................19

**STATUTES**

15 U.S.C. §1125................................................................................................................14

**OTHER AUTHORITIES**

Fed. R. Civ. P. 8(a) ............................................................................................................8

Fed. R. Civ. P. 12(b)(6).....................................................................................8, 9, 11, 14

Fed. R. Civ. P. 12(f) ........................................................................................9, 10, 12, 13

Fed. R. Civ. P. 15(a) ..........................................................................................................7

Fed. R. Civ. P. 16(b) ..........................................................................................................7

Fed. R. Civ. P. 30 (b)(6).....................................................................................................7

iii

Plaintiff, Calico Cottage, Inc., ("Calico") hereby opposes the motion of TNB, Inc. ("TNB") for leave to amend its Answer and reopen fact discovery on the grounds set forth below.

## INTRODUCTION

TNB seeks leave to amend its defenses and add counter-claims based on three new categories of factual allegations not included in its original Answer. TNB fails to show the required "good cause" under Rule 16(b) for allowing these new defenses and counterclaims over four months after the date for amending pleadings set forth in the Court's scheduling order. TNB's new defenses and its counterclaims for breach of contract also fail to plead sufficient facts for the Court to infer the asserted wrongdoing. TNB's new factual allegations and TNB's attendant legal conclusions along with Calico's contentions with respect to each are summarized below:

1. TNB asserts that Calico knew of TNB's sales of fudge before and after the Agreement in suit. The Agreement restricts TNB's from selling fudge products to retailers, but does not prevent TNB from selling fudge to consumers. TNB's pleading fails to specify that the fudge sales that were allegedly known to Calico were sales to retailers. TNB's allegations are, therefore, insufficient for the Court to infer any basis for TNB's laches defense and the other asserted defenses.

2. The Agreement limits each party, for a one-year term, from engaging the other's sales representatives. TNB alleges that Calico breached this provision by requiring that Calico's sales representatives not represent another made-on-premises product. But the Agreement contains no provision that requires Calico to facilitate TNB's attempts to engage Calico's sales representatives. Accordingly, the pleaded facts are insufficient for the Court to infer breach of the Agreement by Calico.

3. TNB alleges that Calico has registered and used TNB-related domain names in connection with Calico's website and has thereby attempted to reduce or eliminate

TNB's business relationship with its customers in violation of the Agreement. These allegations do not support TNB's claim that Calico has breached the Agreement because TNB fails to allege that these activities by Calico constitute an attempt to reduce or eliminate TNB's nut products customer relationships covered by the Agreement.  Calico's website promotes only fudge products, not nut products.  To the extent that TNB wishes to pursue Lanham Act claims based on these allegations, the Lanham Act claims should be asserted in a separate law suit to avoid prejudicial delay in resolving Calico's action for breach of the restrictive covenants in the Agreement. The legal standards relevant to this motion are in essence:

1. A heightened "good cause" standard under Rule 16(b) is applicable to motions to amend pleadings after the date for amending pleadings set forth in the court's scheduling order.
2. Conclusions of law such as assertions of estoppel, laches, waiver or breach of contract are not facts and thus cannot provide support for a claim or defense.
3. A claim or defense is futile or insufficient if it is not supported by well pled relevant facts.
4. Facts that support a separate claim unrelated to the cause of action asserted in the Complaint should be the subject of a separate action, in order to avoid delaying the resolution of this action. Such delay in this action would prejudice Calico and TNB will suffer no prejudice from pursuing its unrelated claims in a separate action.

## FACTUAL BACKGROUND

**1.     The Parties**

Calico is a New York corporation with its principal place of  business in Amityville, New York. Calico is in the business of supplying fudge products to retailers, including both large retail chains and smaller retailer stores throughout the United States. Calico supplies equipment and pre-measured ingredients for making fudge, as well as finished fudge products. Calico also supplies fudge mixes that retailers sell to consumers who wish to make their own fudge at home.

3

Calico is not in the business of selling fudge to consumers. Calico's customers typically use Calico's product to make or sell fudge products under their own name in their own stores.

A large part of Calico's business is the supply of fudge mix[1] that enables retailers to make fresh homemade-style fudge in their stores. This type of product falls within a broader category of confectionary and snack-type food products that have "made on premises" appeal, where the preparation can take place at or behind the counter.

TNB is a Florida corporation with its principal place of business in Sanford, Florida and does business under the name "The Nutty Bavarian." TNB is in the glazed nuts business. It sells glazed nuts, nut roasting and glazing equipment and ingredients for preparing glazed nuts to retailers throughout the United States.

**2.    The Background To The Contract And The Complaint**

This is an action for breach of contract based on TNB's violation of non-competition and non-solicitation provisions in a 2007 contract between the parties.

In late 2006 Calico and TNB became interested in combining their businesses because of the potential synergy between Calico's fudge products and TNB's nut products. A mutual disclosure of confidential and sensitive business information, including market, sales and profitability data, was essential for the effectiveness of the negotiations. Thus Calico and TNB entered into a contract entitled "Agreement of Non-Disclosure, Non-Use and Non-Competition" (hereinafter "the Agreement") effective January 30, 2007, a copy of which is attached as Exhibit A. The Agreement includes non-competition and non-solicitation provisions providing for a "stand-still" arrangement where neither party could expand into the other's business, as that

---

[1] Calico's fudge mix is generally supplied in cases of six packages which contain pre-mixed and measured ingredients for making fudge.

4

business is defined in the Agreement, for five years after the January 30, 2007 date of the Agreement. For that five year period, the Agreement also prohibited any attempt to reduce the other party's current business with its customers.

The merger did not take place. But beginning early this year TNB entered Calico's fudge business and solicited Calico's customers before the expiration of the five-year term in violation of the non-competition and non-solicitation provisions of the Agreement. Calico sued to enforce the non-competition and non-solicitation provisions of the Agreement. In its Answer, dated February 25, 2011, TNB asserted as affirmative defenses that the Agreement is unenforceable for lack of consideration, that the non-competition and non-solicitation provisions are unenforceable and that Calico has failed to mitigate its damages.

3.  **The Provisions of The Agreement Relevant To The Subject Motion**

The term of the Agreement is five years. The Agreement expires on January 30, 2012. (See Exh. A, Agreement ¶¶ 5 and 10). The business of each party is defined in the first page of the Agreement, in the first "Whereas" clause, as follows. Calico's business is defined as "the business of providing to retailers: (i) fudge making equipment, fudge making ingredients and finished fudge that enables retailers to sell fudge to consumers and (ii) make-at-home mixes that are sold by retailers to consumers." TNB's business is defined as "the business of providing to retailers: (i) nut roasting and glazing equipment and ingredients for roasting and glazing nuts that enables retailers to sell roasted and glazed nuts to consumers, and (ii) glazed nuts in bulk and prepackaged glazed nuts that are sold by retailers to consumers." It is crucial to note that both of these business definitions relate to sales to retailers. It is the retailers who then sell to consumers. These definitions do not cover direct sales by either party to consumers.

27857/002/1266018.1

Paragraph 3 of the Agreement, entitled "Non-Solicitation" provides that during the term of the Agreement the parties shall not, directly or indirectly "attempt to reduce or eliminate the current business relationship of the other party with any of the other party's customers." See Exhibit A, Agreement ¶ 3(a)(ii). In other words, Calico agreed that it would not attempt to reduce TNB's nut business (as defined in the Agreement) with TNB's retail customers and TNB would not attempt to reduce Calico's fudge business (as defined in the Agreement) with Calico's retail customers during the five-year term.

The non-solicitation provisions of the Agreement also prohibited the parties from engaging or seeking to engage the services of the other party's representatives for a period of one year. The provision reads as follows:

> "(b) For a period of one year from the effective date the parties shall not, directly or indirectly:
>
> > (i) Engage the services or seek to engage the services of any representative of the other party without the express written consent of the other party."

See Exhibit A, Agreement ¶ 3(b)(i).

**4.     Procedural Background And Status Of Discovery**

Following the Initial Conference Hearing held on April 4, 2011, the Court entered a scheduling order providing that "any party seeking leave to amend and/or join other parties must first confer with all the other party and file an application by 5/2/11" and that "fact discovery must be completed by 6/30/11." Following a hearing on June 21, 2011 on Calico's First Motion To Compel Discovery the Court entered an order providing that "fact discovery is extended to 8/26/11." Calico took the deposition of TNB pursuant to a Notice of Deposition under Fed. R. Civ. P. 30(b)(6) on August 4, 2011. TNB also noticed a deposition of Calico under Fed. R. Civ. P. 30(b)(6).  Calico agreed to hold that deposition on August 30, 2011, after the close of fact

6

discovery. This was to accommodate the schedule of TNB's counsel who was unavailable on any of the other proposed dates for the deposition before the August 26th close of fact discovery.

Calico designated to testify on its behalf two of the Calico personnel who were most knowledgeable about the topics listed in TNB's Rule 30(b)(6) Notice of Deposition. TNB's counsel contacted Calico's counsel before the deposition to demand that Calico designate Calico's President, Mark Wurzel, to testify instead. However, Calico declined to allow TNB to decide who should testify on its behalf with respect to the topics listed in TNB's Notice, since Rule 30(b)(6) provides that the corporation who is noticed can "designate one or more officers, directors, or managing agents, or …other persons who consent to testify on its behalf" and it was more efficient for Calico to designate witnesses with the most personal knowledge on the topics. TNB never noticed Mr. Wurzel's deposition.

## ARGUMENT

### A. Under Rule 16(b) TNB Is Required To Show "Good Cause" To Amend Its Pleadings

TNB argues that the Court is obliged to allow its proposed amendments under the liberal standards for leave to amend pleadings under Fed. R. Civ. P. 15(a). TNB is incorrect. Where, as here, a motion to amend a pleading is made after the time set forth in a court's scheduling order, a court may not disregard the scheduling order but must consider the motion under Rule 16(b)'s more stringent "good cause" standard. *Harriman v. United States,* 2004 U.S. Dist. LEXIS 9713, 1-2 (E.D.N.Y. 2004) (denying motion to amend after close of discovery for lack of good cause), citing *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 340 (2d Cir. 2000) and *Grochowski v. Phoenix Constr.,* 318 F.3d 80 (2d Cir. 2003). The date for amending pleadings set forth in the Court's scheduling order was May 2, 2011. That date has long since passed. Accordingly, TNB's proposed amendments must be denied at this late stage.

### B. The Standard For Pleading Defenses and Counterclaims Requires Pleaded Facts That Support An Inference Of The Alleged Wrongdoing

To survive a motion to dismiss under Rule 12(b)(6), a pleading setting forth a claim for relief must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Bell Atl. Corp.v. Twombly,* 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief." *Iqbal*, 129 S. Ct. at 1950 (internal quotation and citation omitted). Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.,* citing *Twombly* . 550 U.S. at 557. Moreover, "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to [defeat] a motion to dismiss." *Achtman v. Kirby, McInerney & Squire, LLP,* 464 F.3d 328, 337 (2d Cir. 2006) (citations omitted).

Counterclaims, like claims, are subject to Rule 8(a)'s pleading requirements. *Aspex Eyewear, Inc. v. Clariti Eyewear, Inc.,* 531 F. Supp. 2d 620, 623 (S.D.N.Y. 2008). The Second Circuit has also held that "[a]ffirmative defenses which amount to nothing more than mere conclusions of law and are not warranted by any asserted facts have no efficacy." *Shechter v. Comptroller of New York*, 79 F.3d 265, 270 (2d Cir. 1996) (*quoting Nat'l Acceptance Co. of Am. v. Regal Prods., Inc.*, 155 F.R.D. 631, 634 (E.D. Wis. 1994) ("affirmative defenses are pleadings, and therefore, are subject to all pleading requirements of the Federal Rules of Civil Procedure").

### C. Futile Amendments Are Not Permitted

Leave to amend should be denied when the proposed amendment is futile. *Health-Chem Corp. v. Baker*, 915 F.2d 805, 810 (2d Cir. 1990) ("Where, as here, there is no merit in the proposed amendments, leave to amend should be denied."). "An amendment to a pleading is futile if the proposed claim could not withstand a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6)." *Lucente v. IBM,* 310 F.3d 243, 258 (2d Cir. 2002).

Amendments to affirmative defenses are futile if they would not survive a motion to strike under Fed. R. Civ. P. 12(f) which permits a court to "strike from a pleading an insufficient defense." A motion to strike should be granted where (1) there is "no question of fact that might allow the defense to succeed," (2) there is "no substantial question of law that might allow the defense to succeed," and (3) the plaintiff will "be prejudiced by the inclusion of the defense." *Specialty Minerals, Inc. v. Pluess-Staufer AG*, 395 F. Supp. 2d 109, 111-12 (S.D.N.Y. 2005) (granting motion to strike insufficient affirmative defense). *See also DGM Invs., Inc. v. N.Y. Futures Exch., Inc.*, 2004 U.S. Dist. LEXIS 5136, at 4 (S.D.N.Y. 2004) (granting motion to strike deficient affirmative defenses).

Increased time and expense of trial constitute sufficient prejudice to warrant granting a Rule 12(f) motion. *Specialty Minerals* 395 F. Supp. 2d at 114; *FDIC v. Eckert Seamans Cherin & Mellott*, 754 F. Supp. 22, 23 (E.D.N.Y. 1990) ("Where the defense is insufficient as a matter of law, the defense should be stricken to eliminate the delay and unnecessary expense from litigating the invalid claim.").

### D. TNB's Proposed Fifth Affirmative Defense Is Futile Under Rule 12(f)

In its proposed fifth affirmative defense, TNB alleges that Calico had actual knowledge that TNB sold fudge before the parties signed the Agreement, that after the Agreement was signed TNB informed Calico that it planned to continue to sell fudge, and that Calico did not

9

object to TNB's alleged plan to continue to sell fudge. (See TNB's proposed Amended Answer With Counterclaims, ¶¶26-28). TNB then asserts, without explanation, that these alleged facts somehow constitute "waiver, ratification, estoppel, laches and unclean hands" on the part of Calico. (See TNB's proposed Amended Answer With Counterclaims, ¶29).

The most glaring problem with TNB's assertion that it has been selling fudge since before January 2007 is that TNB's President, David Brent affirmed otherwise. Mr. Brent's affidavit, filed with the Court in support of TNB's opposition to Calico's application for a preliminary injunction, states: "TNB has not sold so much as an ounce of fudge to anyone." See Exhibit B, Brent Affidavit ¶ 8. This affidavit is part of the factual record upon which the Court rendered its decision denying Calico a preliminary injunction. TNB is now estopped from retracting Mr. Brent's sworn statement on this fact. Where a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position. *See DeRosa v. Nat'l Envelope Corp.*, 595 F.3d 99, 103 (2d Cir. 2010) (citing *New Hampshire v. Maine*, 532 U.S. 742, 749, 121 S. Ct. 1808, 149 L. Ed. 2d 968 (2001)).

Even if TNB were not estopped from now asserting factual allegations directly contrary to Mr. Brent's prior sworn statement, all of these new alleged facts, if true, would have been known to TNB for years and could, therefore, have been asserted before the May 2, 2011 date for amending pleadings. TNB fails to provide any good cause why it should be allowed to add these allegations to its pleading at this late stage when it could have pleaded them in a timely fashion.

In addition, TNB's proposed pleading is futile because it fails to comport with the required pleading standards and would be stricken under Rule 12(f) since it is not warranted by any asserted facts. See *Shechter*, 29 F. 3d at 270. TNB's new defense is based on the

10

assumption that the Agreement prevents TNB selling fudge *per se* during the five-year term. That assumption is incorrect.

The business that TNB agreed to stay out of for the five-year term of the Agreement was carefully defined in the Agreement to include only the fudge products business in which Calico was engaged as of the date of the Agreement. That business included only fudge products sold to retailers. The Agreement obliged TNB to refrain from entering the business of "providing to <u>retailers</u>: (i) fudge making equipment, fudge making ingredients and finished fudge that enables <u>retailers</u> to sell fudge to consumers and (ii) make-at-home mixes that are sold by <u>retailers</u> to consumers." (Exhibit A, Agreement, page 1, first "Whereas" clause. Emphasis added). Under the Agreement, TNB is free to sell fudge directly to consumers, e.g., via the Home Shopping Network or other channels of trade that are directed to consumers, and such sales by TNB do not give Calico any cause of action against TNB under the Agreement.

Accordingly, TNB's allegation, in paragraphs 27-28 of its proposed amended pleading, that "TNB informed Plaintiff that TNB planned on continuing to sell fudge, as it had before signing the Agreement" and that "Plaintiff failed to raise any objection" does not provide the Court with a basis from which to reasonably infer that Calico had any grounds for suing TNB earlier than 2011 or that Calico acquiesced to TNB's selling fudge products to <u>retailers</u> before 2011.

Not only does TNB fail to allege that it ever sold fudge products to retailers before the Agreement was executed or before 2011, but, during discovery, TNB failed to produce any documents, such as invoices, which would show that it sold fudge products to retailers before 2011. Accordingly, TNB's proposed fifth affirmative defense is not warranted by any asserted facts, and would not survive a motion to strike. See *Shechter,* 79 F.3d at 270. Permitting TNB to

add the various defenses that it asserts as its fifth affirmative defense would add to the time and expense of trial and would necessitate further discovery, which would delay trial to the prejudice of Calico.

### E.     **TNB's Proposed Sixth Affirmative Defense Is Futile Under Rule 12(f)**

For its sixth affirmative defense TNB's sole allegation reads as follows: "Plaintiff breached the contract and cannot enforce the Contract against TNB." (See TNB's proposed amended Answer, ¶ 30).   TNB merely alleges a conclusion of law, without reference to any supporting factual allegations. This pleading is insufficient on its face.

### F.     **TNB's Proposed Third Counterclaim Is Futile Under Rule 12(b)(6)**

TNB's proposed third counterclaim purports to plead two independent breaches of the Agreement by Calico. The first purported breach is based on the allegation that Calico registered domain names related to TNB and directed the domain names to Calico's website. See TNB's proposed amended Answer, ¶ 48. TNB asserts that this use of domain names relating to TNB constitutes an attempt by Calico to "reduce or eliminate TNB's relationship with customers" in violation of paragraph 3(a)(ii) of the Agreement. See TNB's proposed amended Answer, ¶ 49-50. These allegations fail to state a claim for breach of paragraph 3(a)(ii) of the Agreement by Calico for the following reasons.

Paragraph 3(a)(ii) of the Agreement provides the parties shall not "attempt to reduce or eliminate the <u>current business</u> relationship of the other party with any of the other party's customers."  (Emphasis added).  Accordingly, under paragraph 3(a)(ii) Calico agreed that it would not attempt to reduce the business relationship that TNB currently had with its customers, as of the date of the Agreement. TNB's business, as of the date of the Agreement, was specifically defined in the Agreement as "the business of providing to retailers: (i) nut roasting and glazing equipment and ingredients for roasting and glazing nuts that enables retailers to sell

12

roasted and glazed nuts to consumers, and (ii) glazed nuts in bulk and prepackaged glazed nuts that are sold by retailers to consumers." (Exhibit A, Agreement, page 1, first "Whereas" clause).

TNB cannot plausibly allege that the alleged domain name usage by Calico constitutes an attempt by Calico to reduce TNB's "current business relationship" with TNB's customers as defined in the Agreement. TNB fails to allege, and cannot allege, that Calico's website promotes nut products or offers for sale nut products. If any of TNB's customers typed the domain names at issue into their web browser and were directed to Calico's website, they would have found a website that does not offer or promote nut products. TNB's allegations, therefore, fail to plead a plausible claim that Calico attempted to reduce TNB's business relationship with TNB's customers for nut products in violation of paragraph 3(a)(ii) of the Agreement. *See Iqbal*, 129 S. Ct. at 1949-1950. TNB's pleading is therefore futile.

The second alleged breach of the Agreement that TNB purports to plead under its Third Counterclaim is a breach of paragraph 3(b). Under paragraph 3(b) the parties were obliged to refrain from engaging or trying to engage the services of the other party's representatives for a period of one year from the effective date of the Agreement. TNB fails to allege a plausible breach of paragraph 3(b) by Calico. The only way that Calico could have violated paragraph 3(b) was if it tried to hire one of TNB's sales representative within the one year period. TNB fails to make any such allegation.

TNB seems to assert that paragraph 3(b) of the Agreement somehow obliged Calico to support or facilitate TNB's hiring of Calico's sales representatives after the expiration of the one year prohibition on the parties' trying to hire each other's representatives. Paragraph 3(b) contains no such provision. Paragraph 3(b) merely allowed TNB to try to engage Calico's sales representatives after the expiration of the one-year period and to try to persuade the sales

13

representative to give up his/her representation of Calico. It is up to the particular sales representative to accept or decline TNB as a client. However, under Calico's contract with its sales representatives, the representatives may not at the same time represent another "made on premises" type product, such as TNB's glazed nuts products. This is all that is stated in the July 29, 2008 email to which TNB refers but fails to attach to its motion papers. A copy of the email, which was provided to Calico's counsel by TNB's counsel during the August 30 deposition of Calico, is attached as Exhibit C.

Accordingly, TNB's conclusory allegation that Calico's July 29, 2008 email to its sales representatives constitutes a breach of paragraph 3(b) of the Agreement is insufficient to allow the court to draw the reasonable inference that Calico breached paragraph 3(b) of the Agreement. *Iqbal*, 129 S. Ct. at 1949-1950. TNB's pleading is therefore futile under Rule 12(b)(6).

### G. TNB's Proposed Second And Third Counterclaims Under The Lanham Act Belong In A Separate Action

TNB's first and second counterclaims allege violation of the Lanham Act, 15 U.S.C. §1125, by Calico based on alleged registration and use by Calico of domain names that relate to TNB. TNB alleges that it has been damaged by Calico's alleged unlawful registration and use of these domain names and seeks monetary as well as injunctive relief. See TNB's proposed amended Answer, ¶¶ 39 and 44. Calico will need to obtain discovery as to the extent and basis for TNB's claim to the exclusive use of certain domain names and will need to depose TNB as to its alleged damages. TNB has expressed its intention of conducting substantial discovery including further document demands, requests for admission and depositions.

TNB's Lanham Act claims should not be included in this action because they are not related to the subject matter of the Complaint, namely the Agreement between the parties, and the inclusion of these claims in this case will necessitate the reopening of discovery and further

significant document production, depositions and potential motion practice. This will serve to delay trial in this case until well after the Agreement has expired. This delay will severely prejudice Calico's ability to obtain timely enforcement of the restrictive covenants at issue, thus leaving Calico without an effective remedy for TNB's breach of the non-competition and non-solicitation provisions of the Agreement.

      The inclusion of TNB's Lanham Act claims in this case will prejudice Calico while a separate action by TNB to assert its claims under the Lanham Act will not prejudice TNB. TNB's motion papers do not allege any prejudice that would result if it were to assert these Lanham Act claims in a separate action. Accordingly, it is respectfully requested that the Court deny TNB's motion to include its Lanham Act claims as counterclaims in this case.

15

## CONCLUSION

For the above-stated reasons, it is respectfully requested that the Court deny TNB's motion for leave to amend its Answer.

Dated: September 15, 2011  Respectfully submitted
New York, New York

                                                    COWAN, LIEBOWITZ & LATMAN, P.C.

                                                    By: /s/ Catriona M. Collins
                                                    Lloyd McAulay (LM6839), lmc@cll.com
                                                    Catriona M. Collins (CC9740), cmc@cll.com
                                                    1133 Avenue of the Americas
                                                    New York, New York 10036-6799
                                                    (212) 790-9200
                                                    Attorneys for Plaintiff