UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------------------X

CALICO COTTAGE, INC.,                                Civ. No. CV11-0336 (DLI)(MDG)

                              Plaintiff,

               -against-

TNB, INC.

                              Defendant.

-----------------------------------------------------------------X

## DEFENDANT'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S OBJECTIONS TO MAGISTRATE JUDGE GO'S SEPTEMBER 23, 2011 ORDER

MELTZER, LIPPE, GOLDSTEIN
& BREITSTONE, LLP
190 Willis Avenue
Mineola, New York 11501
Tel.: (516) 747-0300
Fax: (516) 237-2893

*Counsel for Defendant*
By: Douglas Levine, Esq. (DL-4920)

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES................................................................................ii

PRELIMINARY STATEMENT ....................................................................1

FACTS RELEVANT TO PLAINTIFF'S OBJECTIONS ....................................2

I.  Plaintiff's Registration Of TNB-Themed Websites And
    Solicitation Of TNB's Customers.............................................. 3

II. Plaintiff's Improper Communications With Its Independent
    Sales Representatives................................................................ 4

III. Plaintiff's Knowledge And Ratification Of TNB's Activities
     In The Fudge Industry............................................................. 4

IV. TNB Acts Diligently, Judge Go Grants TNB's Motion To
    Amend Its Answer To Assert Counterclaims And Add
    Affirmative Defenses And Plaintiff Wastes Time And Judicial Resources ........... 5

ARGUMENT..................................................................................................8

I.  Judge Go Correctly Held That TNB Demonstrated Good Cause
    For Its Amendments And Plaintiff's Recycled Arguments To The
    Contrary Lack Merit .................................................................9

II. Judge Go Correctly Held That TNB's Proposed Amendments
    Are Not Futile ........................................................................ 11

    a.  Judge Go Correctly Held That TNB's Sixth Affirmative Defense Is Not
        Futile ............................................................................. 13

    b.  Judge Go Correctly Held That TNB's Fifth Affirmative Defense Is Not
        Futile ............................................................................. 14

CONCLUSION.............................................................................................18

i

## TABLE OF AUTHORITIES

**United States Supreme Court Cases**                                    **Page**

Bell Atl. Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955 (2007) ........................ passim

Easley v. Cromartie, 532 U.S. 234, 121 S.Ct. 1452 (2001)................................................. 8

United States v. United States Gypsum Co., 333 U.S. 364, 68 S.Ct. 525 (1948)............... 8


**Second Circuit Cases**                                                **Page**

Ideal Steel Supply Corp. v. Anza, 652 F.3d 310 (2d Cir. 2011)................................ passim


**District Court Cases**                                                **Page**

Banus v. Citigroup Global Mkts., Inc., No. 09 Civ. 7128 (LAD) 2010 WL 1643780
    (S.D.N.Y. Apr. 23, 2010)............................................................................................... 14

Barratt v. Joie, No. 96 CIV 0324 (LTS)(THK), 2002 WL 335014 (S.D.N.Y. Mar. 4,
    2002) ............................................................................................................................... 9

Dubied Machinery Co. v. Vermont Knitting Co., Inc., 739 F.Supp. 867 (S.D.N.Y. 1990)
    .................................................................................................................................. 13, 14

Enzymotec Ltd. v. NBTY, Inc., 754 F.Supp.2d 527 (E.D.N.Y. 2010)............................... 9

Knitting Fever, Inc. v. Coats Holding Ltd., No. 05 CV 1065 (DRH)(ML), 2005 WL
    3050299 (E.D.N.Y. Nov. 14, 2005)................................................................................ 9

Manigaulte v. C.W. Post of Long Island Univ., 659 F. Supp. 2d 367 (E.D.N.Y. 2009) ... 9,
    15

Mental Disability Law Clinic v. Hogan, 739 F. Supp. 2d 201 (E.D.N.Y. 2010)............ 8, 9

Permatex, Inc. v. Loctite Corp., No. 03 Civ. 943, 2004 WL 1354253 (S.D.N.Y. June 17,
    2004) ......................................................................................................................... 9, 11

Song v. Dreamtouch, Inc., No. 01 Civ. 0386(AGS), 2001 WL 487413 (S.D.N.Y. May 8,
    2001) ................................................................................................................... 13, 14, 17

UMG Recordings, Inc. v Lindor, No. CV-05-1095 (DGT), 2006 WL 3335048 (E.D.N.Y. Nov. 9, 2006) ............................................................................................................. 11

**Statutes**                                                                  **Page**

15 USCA § 1125 ............................................................................................................. 4

28 U.S.C.A. § 1927 ........................................................................................................ 8

FED. R. CIV. P. §72 (a) ........................................................................................... passim

FED. R. CIV. P. 8 (a)(2) ...................................................................................... 11, 12, 15

FED. R. CIV. P. 16 (b) .............................................................................................. passim

FED. R. CIV. P. 12 (f) ...................................................................................................... 16

Defendant TNB, Inc. ("TNB"), submits this Memorandum of Law in opposition to Plaintiff Calico Cottage, Inc.'s ("Plaintiff") objections to Magistrate Judge Go's September 23, 2011 Order ("Order") pursuant to Rule 72 (a) of the Federal Rules of Civil Procedure in the above-captioned action.

## PRELIMINARY STATEMENT

Plaintiff's objections to Judge Go's Order are before this Court for one reason: TNB recently learned that Plaintiff violated the terms of the alleged agreement at issue in this matter and Plaintiff is doing everything in its power to delay TNB's discovery of the facts relevant to this breach. Toward the tail end of discovery, TNB was informed by its customer that Plaintiff registered several TNB-themed domain names in Plaintiff's name and set up a "pointer" that redirects internet users who click on these websites to Plaintiff's website. These actions constitute not only a breach of the subject Agreement of Non-Disclosure, Non-Use and Non-Competition ("Agreement") signed by the parties more than four years ago on January 22, 2007 that the Plaintiff is trying to enforce, but also constitute violations of the Lanham Act and a breach of the implied covenant of good faith and fair dealing.

Since TNB's discovery of Plaintiff's actions that were concealed throughout the discovery process, Plaintiff has thwarted all efforts by TNB to obtain additional information relevant to this critical issue. First, Plaintiff refused to produce Mark Wurzel, its president who registered the TNB-themed websites in Plaintiff's name, for a deposition. Second, after the deponents proffered by Plaintiff for a deposition denied any knowledge about this critical issue, Plaintiff refused to consent to (i) an amendment of TNB's Answer to assert relevant counterclaims and affirmative defenses and/or (ii) an

extension of discovery so that TNB could explore the full extent of Plaintiff's actions. Third, Plaintiff opposed TNB's motion to amend its Answer and extend discovery. Fourth, after Judge Go granted TNB's motion to amend, Plaintiff requested leave of this Court to submit a motion to strike one explanatory 18-word footnote from the Answer that will undoubtedly delay the underlying action. Finally, Plaintiff submitted the subject objections to Judge Go's Order to the extent that the Order allowed TNB to add its fifth and sixth affirmative defenses; another litigation tactic that will unquestionably delay the underlying action and any discovery in connection with those affirmative defenses.

In filing these objections to the Order, Plaintiff does little more than reiterate its arguments that were previously rejected by Judge Go, at times copying and pasting sections of its opposition to TNB's motion to amend into its memorandum in support of its objections. Rule 72 (a) was not enacted for this purpose and it is time for Plaintiff's sharp litigation tactics to stop. It is time for this action to move forward and for TNB to exercise its rights to explore Plaintiff's breach of the subject Agreement and violations of applicable law. Plaintiff has failed to satisfy its heavy burden of proving that Judge Go's Order was clearly erroneous or contrary to law. Consequently, to avoid a further waste of time and judicial resources, this Court should deny Plaintiff's objections and affirm Judge Go's Order in its entirety.

## FACTS RELEVANT TO PLAINTIFF'S OBJECTIONS

The Agreement's non-compete provision states, in relevant part, that "[e]ach party agrees to refrain from entering into the business of the other party, said business being set above as Calico Business and Nutty Bavarian Business."[1]  See Agreement, page 5 ¶4.

---

[1] The Agreement defines the Nutty Bavarian Business as "the business of providing to retailers: (i) nut roasting and glazing equipment and ingredients for roasting and glazing nuts that enables retailers to sell

The Agreement's non-solicitation provision states, in relevant part, that "[d]uring the term of this Agreement, the parties shall not, directly or indirectly...attempt to reduce or eliminate the current business relationship of the other party with any of the other party's customers." See Agreement, page 4 ¶3. In its Complaint and throughout the course of this action, Plaintiff has steadfastly maintained that it has not violated the Agreement while setting forth alleged violations of the Agreement by TNB consisting of alleged solicitations of Plaintiff's customers and TNB's general entry into the fudge industry.

### I.   Plaintiff's Registration Of TNB-Themed Websites And Solicitation Of TNB's Customers

Nevertheless, in August of 2011, shortly before the initially scheduled conclusion of discovery, TNB learned from a customer that Plaintiff breached the Agreement at least seven months ago by registering several TNB-themed domain names in Plaintiff's name and redirecting internet users who clicked on these websites to Plaintiff's website. Specifically, acting on behalf of Plaintiff, Mark Wurzel registered the following TNB-themed domain names to Plaintiff: (1) www.nuttybavarian.us, (2) www.nuttybavarianfudge.com, (3) www.nuttybavarianfudge.net, (4) www.nuttybfudge.com and (5) www.nuttybfudge.net. See Exhibit A. Plaintiff concealed these actions from TNB throughout the discovery process while continuously representing to TNB and to this Court that it had not breached the Agreement.

Plaintiff's registration of fraudulent TNB websites and redirection of TNB's customers from those websites to Plaintiff are acts specifically aimed at reducing or

---

roasted and glazed nuts to customers, and (ii) glazed nuts in bulk and prepackaged glazed nuts that are sold by retailers to consumers". See Agreement, page 1, Whereas Clause 2. The Agreement defines the Calico Business as "the business of providing to retailers: (i) fudge making equipment, fudge making ingredients and finished fudge that enables retailers to sell fudge to customers and (ii) make-at-home mixes that are sold by retailers to consumers". See Agreement, page 1, Whereas Clause 1.

eliminating the business relationship of TNB with its customers. Plaintiff not only sought to reduce TNB's business relationship with its customers, but also sought to steal those customers from TNB. These acts also (i) breach the implied duty of good faith and fair dealing implicit in every contract and (ii) violate the Lanham Act. See 15 USCA § 1125 (2006).

## II.     Plaintiff's Improper Communications With Its Independent Sales Representatives

Also in August of 2011, TNB obtained an e-mail dated July 29, 2008, sent by Plaintiff to all of its independent sales representatives. See a true copy of the e-mail, attached hereto as Exhibit B. The e-mail instructed the independent representatives that they could not represent both Plaintiff and TNB, despite the fact that Paragraph 3 (b) of the Agreement allowed TNB (and Plaintiff) to hire each other's sales representatives after January 30, 2008. Before the Agreement was signed, TNB informed Plaintiff that it intended to hire its representatives after this one year prohibition period. By expressly prohibiting Plaintiff's representatives from representing TNB after this critical January 30, 2008 date, Plaintiff breached the Agreement and the implied covenant of good faith and fair dealing owed by Plaintiff to TNB. Once again, Plaintiff failed produce or otherwise mention this document in discovery while continuously proclaiming its angelic actions in connection with the Agreement.

## III.    Plaintiff's Knowledge And Ratification Of TNB's Activities In The Fudge Industry

In July of 2011, TNB's counsel discovered documents evidencing the fact that Plaintiff knew and failed to object to the fact that (1) TNB was in the fudge industry before signing the Agreement and (2) TNB expressly stated to Plaintiff that it intended to

stay in that industry after merger discussions between the parties were terminated. Specifically in an April 5, 2007 e-mail, TNB's President David Brent told Mark and Larry Wurzel, principals of Plaintiff, that TNB did not want to move forward with a merger with Plaintiff and reminded Plaintiff that TNB "still want[ed] to pursue selling fudge on [the] Home Shopping Network as well as opening up a series of fudge/nut kiosks in shopping malls." A true copy of the April 5, 2007 e-mail from Mr. Brent to Mark and Larry Wurzel is attached hereto as Exhibit C. Plaintiff's prior sales of fudge on the Home Shopping Network before the Agreement was signed are reflected in the documents collectively annexed hereto as Exhibit D. Plaintiff's failure to object to TNB's fudge industry activities subjects Plaintiff to TNB's valid defenses for waiver, ratification, estoppel and laches.

### IV. TNB Acts Diligently, Judge Go Grants TNB's Motion To Amend Its Answer To Assert Counterclaims And Add Affirmative Defenses And Plaintiff Wastes Time And Judicial Resources

After learning of Plaintiff's internet-based activities and improper communications with its independent representatives, TNB acted diligently, seeking information concerning these issues during the depositions of Ronald Beilin, Plaintiff's outside consultant, and Ian Gerrard, Plaintiff's Regional Sales Director, despite Plaintiff's prior refusal to produce Mark Wurzel for a deposition.[2] Since each deponent denied any knowledge of Plaintiff's recently discovered actions and discovery was concluding, TNB requested Plaintiff's consent to TNB's amendment of its Answer to assert counterclaims and affirmative defenses setting forth Plaintiff's actions and/or an extension of discovery.

---

[2] Plaintiff's counsel was also contacted shortly after TNB's counsel's discovery of the Home Shopping Network documents and the April 5, 2007 e-mail and Plaintiff's counsel refused to consent to an amendment to TNB's Answer. The documents were produced in discovery and discussed by Mr. Brent during his deposition.

Plaintiff refused to consent to this request. This refusal was reiterated at an August 31, 2011 conference with Judge Go and Plaintiff insisted that TNB submit a motion to amend to its Answer to assert counterclaims and defenses based largely on Plaintiff's concealed actions.

Consistent with Judge Go's instructions to keep the motion to amend brief, TNB submitted a letter motion requesting leave to file an Amended Answer With Counterclaims ("Amended Answer") and an extension of discovery. A Proposed Amended Answer With Counterclaims ("Proposed Amended Answer") submitted with the letter motion set forth counterclaims against Plaintiff for its breach of the Agreement and violations of the Lanham Act, a fifth affirmative defense sounding in waiver, ratification, estoppel and laches and a sixth affirmative defense sounding in unclean hands based on Plaintiff's breach of the Agreement.[3] Thereafter, despite (i) Judge Go's concise briefing schedule on the motion to amend that incorporated her express direction for reasonably brief motion papers and (ii) Rule 3 (B) of Judge Go's Individual Motion Practice Rules requiring counsel to "exercise their professional judgment as to the length of briefs", Plaintiff continued to waste judicial resources by submitting a 16-page brief in opposition to TNB's letter motion to amend, which was less than 3 pages long.

In its opposition to TNB's motion to amend, Plaintiff set forth the same arguments regarding TNB's fifth and sixth affirmative defenses that it repeats in the subject objections to Judge Go's Order. Specifically, Plaintiff raised issue with the fact that TNB's sixth affirmative defense stated "Plaintiff breached the Agreement and cannot enforce the Agreement against TNB", arguing that the affirmative defense was merely a

---

[3] An unclean hands defense was initially also set forth in the sixth affirmative defense by mistake, but was subsequently removed.

conclusion of law without factual support. Plaintiff essentially asked the Court to ignore the rest of Plaintiff's Proposed Amended Answer that set forth Plaintiff's breach in significant detail in its counterclaims. Regarding TNB's fifth affirmative defense sounding in waiver, ratification, estoppel and laches, Plaintiff opposed this amendment before Judge Go on the same grounds that it now raises in its objections to Judge Go's Order, stating that (i) TNB failed to show good cause for the amendment and (ii) the proposed amendment was futile.[4] Judge Go rejected Plaintiff's arguments which are reiterated before this Court and granted TNB's motion in all respects except for TNB's request to add a counterclaim for breach of contract and breach of the implied covenant of good faith and fair dealing based on Plaintiff's improper communications with its sales representatives. However, Judge Go did permit TNB to rephrase that counterclaim as a claim for breach of the implied covenant of good faith and fair dealing only. Judge Go also rejected Plaintiff's argument that TNB's breach of contract claims and Lanham Act claims are not related and should be pursued separately; one of many tactics by Plaintiff that Judge Go correctly noted would waste judicial resources. See Order, page 2, paragraph 2.

Even after Judge Go's Order, Plaintiff continued to pursue any and all courses of action designed to prevent TNB from promptly exercising its rights to obtain information relevant to Plaintiff's improper actions. Instead of moving forward with this action, Plaintiff requested leave of this Court to submit a motion to strike one 18-word footnote from TNB's Amended Answer that simply clarifies the term "Plaintiff" and explains that it includes Calico Cottage, Inc. and any of its principals, employees, agents, officers or

---

[4] Plaintiff also raised an estoppel argument that was rejected by Judge Go and was briefly glossed over in Plaintiff's objections to Judge Go's Order.

directors; a motion that could only be described as an attempt to unreasonably and vexatiously multiply proceedings in violation of 28 U.S.C.A. § 1927. Finally, Plaintiff moved one step further, submitting the subject objections to the Order which does nothing more than reiterate arguments that Judge Go previously denied. Apparently Plaintiff believes that it can prevent this action from moving forward and avoid disclosing information to TNB by throwing as many legal hoops in TNB's path as possible. These litigation tactics should not be tolerated by this Court, which should affirm Judge Go's Order in its entirety.

## ARGUMENT

Plaintiff's objections to Magistrate Go's Order arise under Rule 72 (a) of the Federal Rules of Civil Procedure, which sets forth a party's right to serve and file objections to a Magistrate's order that is not dispositive of a party's claim or offense within 14 days after being served with a copy of that order. See FED. R. CIV. P. §72 (a) (2011). In reviewing an objection to a non-dispositive Magistrate order like Judge Go's Order granting TNB's motion to amend its Answer and extend discovery, a district court should only disturb the magistrate's order if the objecting party demonstrates that the order is "clearly erroneous or is contrary to law." Id. The objecting party seeking to overturn the magistrate's order bears a heavy burden, as "clear error may be found if, 'on the entire evidence' the Court is 'left with the definite and firm conviction that a mistake has been committed.'" Mental Disability Law Clinic v. Hogan, 739 F. Supp. 2d 201, 202-04 (E.D.N.Y. 2010), *quoting* Easley v. Cromartie, 532 U.S. 234, 121 S.Ct. 1452 (2001), *quoting* United States v. United States Gypsum Co., 333 U.S. 364, 68 S.Ct. 525 (1948). Furthermore, the Eastern District has emphasized that the "standard is highly

deferential . . . and only permits reversal where the magistrate abused his discretion." Mental Disability Law Clinic, 739 F. Supp. 2d at 202-04, *quoting* Knitting Fever, Inc. v. Coats Holding Ltd., No. 05 CV 1065 (DRH)(MLO), 2005 WL 3050299, at *3 (E.D.N.Y. Nov. 14, 2005). Finally, although a district court reviewing an objection under Rule 72(a) typically conducts a *de novo* review of the contested portions of the order, where, as here, a party "simply reiterates his original arguments, the Court reviews the Report and Recommendation only for clear error." Manigaulte v. C.W. Post of Long Island Univ., 659 F. Supp. 2d 367, 371-75 (E.D.N.Y. 2009), *quoting* Barratt v. Joie, No. 96 CIV 0324 (LTS)(THK), 2002 WL 335014, at *1 (S.D.N.Y. Mar. 4, 2002).

This Court should not disturb Judge Go's Order because Plaintiff has failed to carry its heavy burden of demonstrating that the contested portions of the Order are clearly erroneous or contrary to the law. Instead, Plaintiff simply reiterates identical arguments that Judge Go previously and appropriately rejected. Plaintiff's attempt to raise such meritless objections for the sole purpose of making TNB jump through another legal hopp before obtaining its discovery and proceeding with this action should not be countenanced by this Court who should, respectfully, confirm Judge Go's Order in its entirety.

## I. Judge Go Correctly Held That TNB Demonstrated Good Cause For Its Amendments And Plaintiff's Recycled Arguments To The Contrary Lack Merit

To satisfy the good cause requirement of FRCP16 (b), a movant must demonstrate that it acted with due diligence. See Enzymotec Ltd. v. NBTY, Inc., 754 F.Supp.2d 527, 536-537 (E.D.N.Y. 2010); Permatex, Inc. v. Loctite Corp., No. 03 Civ. 943, 2004 WL 1354253 at *3 (S.D.N.Y. June 17, 2004). TNB met this burden in connection with both

556841-1                                            9

affirmative defenses, as Judge Go held that "[t]here is no evidence of defendant acting in bad faith or in a dilatory manner." See Order, page 1, paragraph 4.  TNB has acted diligently upon discovering all information relevant to its counterclaims and defenses. On the other hand, Plaintiff has not acted in good faith, concealing its internet-based activities and improper communications with its independent representatives throughout the discovery process and forcing TNB to discover this information through a customer.

Plaintiff has not raised issue with Judge Go's determination that TNB exercised due diligence in connection with its sixth affirmative defense sounding in unclean hands and stating that Plaintiff cannot enforce the Agreement that it breached.  On the other hand, Plaintiff does raise issue with Judge Go's determination that TNB exercised due diligence and acted in good faith in connection with its fifth affirmative defense sounding in waiver, ratification, estoppel and laches.  In that regard, Plaintiff states that TNB should have raised these defenses at the outset because they are based on invoices evidencing TNB's sale of fudge on the Home Shopping Network in December of 2006 and Plaintiff's failure to object to TNB's April 5, 2007 e-mail stating that Plaintiff would continue to pursue fudge business activities after the termination of the parties' contemplated merger.

However, as TNB explained in response to the same exact argument advanced before Judge Go in opposition to TNB's motion to amend, TNB only came across the April 5, 2007 e-mail recently during the discovery process and was not aware of its significance or the significance of its prior sales of fudge until after its conversations with its counsel.  Plaintiff's counsel was contacted shortly after TNB's discovery of these documents and refused to consent to an amendment to TNB's Answer to assert the fifth

affirmative defense currently set forth in the Amended Answer. The documents were produced in discovery and discussed by Mr. Brent during his deposition. There was absolutely no surprise or prejudice associated with these documents. Thus, TNB acted diligently as soon as the relevance of this information was brought to its attention shortly into the discovery process.

In its objection to Judge Go's holding, that TNB acted diligently and demonstrated good cause for adding its fifth affirmative defense to its Answer, Plaintiff fails to demonstrate that Judge Go's ruling was clearly erroneous or contrary to law. Instead, Plaintiff simply repeats its argument that TNB knew this information from the outset of this action and completely ignores the aforementioned explanatory facts accepted by Judge Go's evidence of TNB's diligence. Since Plaintiff's conclusory reiteration of its previously rejected argument fails to meet its high burden of proving that Judge Go's ruling on TNB's good cause was clearly erroneous or contrary to law, that ruling should be confirmed by this Court.

## II. Judge Go Correctly Held That TNB's Proposed Amendments Are Not Futile

In challenging TNB's affirmative defenses as futile, Plaintiff essentially seeks to litigate the merits of TNB's defenses, which TNB is not required to do at this time. See, e.g., Permatex, Inc., 2004 WL 1354253 at *3; UMG Recordings, Inc. v Lindor, No. CV-05-1095 (DGT), 2006 WL 3335048 at *3-4 (E.D.N.Y. Nov. 9, 2006). Instead, applicable law states that "Fed.R.Civ.P. 8(a)(2) "'requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to give the defendant fair notice of what the ... claim is and the grounds upon which it rests'". Ideal Steel Supply Corp. v. Anza, 652 F.3d 310 (2d Cir. 2011), *quoting* Bell Atl. Corp. v. Twombly, 550

U.S. 544, 555, 127 S. Ct. 1955, (2007), *quoting* FED. R. CIV. P. 8 (a)(2) (2011). The Second Circuit explains that a pleading "'does not need detailed factual allegations,' but only '[f]actual allegations [that are] enough to raise a right to relief above the speculative level'". Ideal Steel, 652 F.3d at 310 *quoting* Twombly, 550 U.S. at 555. Furthermore, the Second Circuit clarified the holding in Twombly concerning the pleading requirements set forth in the Federal Rules of Civil Procedure, explaining that "[a]sking for plausible grounds ... does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal[ity]." Ideal Steel, 652 F.3d at 310 *quoting* Twombly, 550 U.S. at 555.

In setting forth its fifth and sixth affirmative defenses, TNB clearly satisfies this liberal pleading standard, which Judge Go confirmed in the Order. See Order, page 2, paragraph 3. Specifically, Judge Go held that the counterclaims and affirmative defenses proposed by TNB were not futile, except for its breach of contract/breach of the implied covenant of good faith and fair dealing counterclaim for Plaintiff's improper communications with its sales representatives, which the Court allowed TNB to replead as a counterclaim for breach of the implied covenant of good faith and fair dealing alone. See Order, page 1, paragraph 5. In response to the same arguments advanced here concerning the futility of TNB's affirmative defenses, Judge Go specifically found that the affirmative defenses were not futile and, contrary to Plaintiff's contention, would survive a motion to strike. See Order, page 2, paragraph 3. In objecting to this ruling, Plaintiff must demonstrate that this ruling was clearly erroneous or contrary to applicable law. See Fed. R. Civ. P. § 72(a) (2011).

### a. Judge Go Correctly Held That TNB's Sixth Affirmative Defense Is Not Futile

In opposition to TNB's motion to amend, Plaintiff previously argued that TNB's sixth affirmative defense asserted a conclusion of law without any supporting facts, as that affirmative defense states that "Plaintiff breached the Contract and cannot enforce the Contract against TNB." Judge Go disagreed, holding that TNB pled sufficient facts to support this affirmative defense. See Order, page 2, paragraph 3. Apparently, Judge Go did what all litigants are required to do in this Circuit and what Plaintiff failed to do here: read the entire Amended Answer as courts are required to "**read the pleading as a whole**". Song v. Dreamtouch, Inc., No. 01 Civ. 0386(AGS), 2001 WL 487413 at *1 (S.D.N.Y. May 8, 2001) (emphasis added). Indeed, the obligation to read pleadings reasonably is exemplified by case law holding that when a defendant's counterclaim includes allegations that could be pled as a counterclaim or an affirmative defense, the counterclaim can be read as both. See Dubied Machinery Co. v. Vermont Knitting Co., Inc., 739 F.Supp. 867, 871 (S.D.N.Y. 1990).

Here, TNB's Amended Answer sets forth its sixth affirmative defense concerning Plaintiff's inability to enforce the Agreement that it breached and then immediately goes on to set forth Plaintiff's breach of the Agreement in significant detail in its first counterclaim. Accordingly, when read along with the rest of the Amended Answer, there are more than sufficient facts to support TNB's sixth affirmative defense sounding in unclean hands. Plaintiff is unable to explain how the Order's conclusion to that end is clearly erroneous or contrary to applicable law, only offering its recycled argument of insufficient pleading that Judge Go already rejected.

556841-1                                13

Plaintiff's contention that it is left to "guess" that the breach referred to in TNB's sixth affirmative defense is the breach set forth in TNB's counterclaim is absolutely disingenuous and arguably frivolous. There is no guesswork here. TNB does not have to explicitly refer to the breach as "the breach set forth below" or copy and paste its sixth affirmative defense after the counterclaim to make the breach any clearer. The breach is patently obvious from, and expressly stated in the Amended Answer, which the Plaintiff must read reasonably as a whole, rather than reading one part of it and pretending to ignore the rest. See Song, 2001 WL 487413 at *1; Dubied Machinery Co., 739 F.Supp. at 871. In addition, the case law cited by Plaintiff in support of its argument that TNB's sixth affirmative defense is nothing more than a naked legal defense involved **no supporting factual allegations**, a situation that is clearly distinguishable from this case. See Banus v. Citigroup Global Mkts., Inc., No. 09 Civ. 7128 (LAD) 2010 WL 1643780 at fn 65 (S.D.N.Y. Apr. 23, 2010). Plaintiff's objection to the portion of the Order's ruling that grants TNB leave to add its sixth affirmative defense is a palpable waste of this Court's time and judicial resources and should not be tolerated. Accordingly, this Court should affirm Judge Go's ruling that TNB's sixth affirmative defense is not futile and grant such other and further relief as it deems just and proper in that regard.

### b.  Judge Go Correctly Held That TNB's Fifth Affirmative Defense Is Not Futile

Once again, Plaintiff's objection to Judge Go's ruling permitting TNB to add its fifth affirmative defense sounding in waiver, ratification, estoppel and laches largely relies on identical arguments raised in opposition to TNB's motion to amend, stating that the affirmative defense is not sufficiently pled. Plaintiff specifically emphasizes its prior

argument that its business, as defined by the Agreement, only includes the sale of fudge products to retailers and, accordingly, TNB's affirmative defense must specifically state that Plaintiff failed to object to TNB's sale of fudge products to retailers. In doing so, Plaintiff again ignores its obligation to explain how Judge Go's Order rejecting this incorrect pleading standard and holding that TNB's fifth affirmative defense is properly pled is clearly erroneous or contrary to law.

As set forth supra, the Amended Answer is a notice pleading that must set forth a "short and plain statement of the claim". FED. R. CIV. P. 8 (a)(2) (2011). Although Plaintiff seems to believe that the holding in Twombly requires a high degree of specificity akin to a fraud claim and detailed supporting factual allegations, the Second Circuit explains that a pleading "'does not need detailed factual allegations,' but only '[f]actual allegations [that are] enough to raise a right to relief above the speculative level'" and that "[a]sking for plausible grounds ... does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal[ity]." Ideal Steel, 652 F.3d at 310 quoting Twombly, 550 U.S. at 555. Although Plaintiff may interpret this standard differently, Judge Go's Order should not be overturned based on Plaintiff's own views on what the law should be. See Manigaulte, 659 F. Supp. 2d at 371-75.

TNB's fifth affirmative defense raises a right to relief far beyond the speculative level by alleging the following:

> Plaintiff had actual knowledge that TNB sold fudge before the parties signed the Agreement...After the parties terminated their relationship and failed to move forward with their proposed merger, TNB informed Plaintiff that TNB planned on continuing to sell fudge, as it had done before signing the Agreement...Plaintiff did not object to TNB's planned continuance of its fudge business operations....

Plaintiff's claims are, accordingly, barred by the doctrines of waiver, ratification, estoppel and/or laches.

See Amended Answer, ¶¶26-29. While Plaintiff is correct that the Agreement defines its business as the sale of fudge products to retailers, TNB's April 5, 2007 e-mail to Mark and Larry Wurzel, stating that TNB did not want to move forward with a merger with Plaintiff, but still wanted to pursue selling fudge referred to selling fudge generally. In, stating that it "still want[ed] to pursue selling fudge on [the] Home Shopping Network as well as opening up a series of fudge/nut kiosks in shopping malls", TNB did not, as Plaintiff suggests, limit this sale to individual customers rather than retailers. See Exhibit C. Through fudge/nut kiosks and sales on the Home Shopping Network, TNB can sell fudge to anyone, including retailers or general customers. TNB can also operate fudge/nut kiosks with retailers who purchase its fudge products. Certainly, TNB's corresponding allegations in its fifth affirmative defense that TNB informed Plaintiff that it planned on selling fudge and that Plaintiff failed to object to such sales set forth "enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal[ity]". Ideal Steel, 652 F.3d at 310 *quoting* Twombly, 550 U.S. at 555. Plaintiff's previously rejected and now recycled argument that TNB's defense must specify that Plaintiff specifically failed to object to TNB's sale of fudge products to retailers finds no basis in fact or law.

Furthermore, Plaintiff's allegation that the fifth affirmative defense is not sufficiently pled and would not survive a motion to strike under Rule 12 (f) because it fails to set forth the elements of waiver, ratification, estoppel and laches is simply incorrect. First, it is well-settled that a motion to strike a defense will not be granted unless the plaintiff satisfies several prerequisites, including demonstrating that "the

plaintiff would succeed despite any facts which could be proved in support of the defense" and that the plaintiff would be "prejudiced by the inclusion of the defense." Song, 2001 WL 487413 at *1. Since the facts set forth in the fifth affirmative defense alone sufficiently support that defense and Plaintiff has not demonstrated any prejudice that it would suffer by the inclusion of this defense, any motion to strike the fifth affirmative defense would fail. Plaintiff apparently understood that such a motion would fail, as its recent request for leave to file a motion to strike only sought to strike a footnote from the Amended Answer and did not seek to strike the fifth or sixth affirmative defenses.

Second, TNB has satisfied all of the elements of waiver, ratification estoppel and laches, all of which are related defenses stemming from Plaintiff's failure to object to TNB's expressed intention of engaging in fudge industry activities approximately four years ago. In connection with the waiver defense, the Amended Answer pleads Plaintiff's known rights to object to or otherwise assert its rights against TNB in connection with TNB's fudge business activities and Plaintiff's abandonment of said rights. In connection with its ratification defense, TNB's fifth affirmative defense sets forth Plaintiff's implied approval of TNB's fudge business activities, which Plaintiff has previously alleged would constitute a breach of the Agreement. In connection with its laches defense, TNB's fifth affirmative defense sets forth Plaintiff's undue delay in asserting its rights against TNB for any alleged breach of the Agreement after TNB told Plaintiff about its planned fudge activities. TNB would suffer prejudice from Plaintiff's delay, as its fudge business relationships, plans and operations which were implicitly approved by Plaintiff years ago would be abandoned and potentially destroyed. Finally,

556841-1                              17

in connection with its estoppel defense, TNB's fifth affirmative defense sets forth Plaintiffs failure to object to TNB's planned fudge business activities that TNB expressly stated that it intended to pursue after the merger discussions between the parties fell apart. TNB relied on Plaintiff's waiver of its rights by expending substantial efforts to commence fudge business activities and Plaintiff should be stopped from now claiming a breach of the Agreement.

Thus, as Judge Go held, TNB's fifth affirmative defense is not futile, but is properly pled and would survive any motion to strike. See Order, page 2, paragraph 3. Plaintiff has failed to meet its high burden in demonstrating that Judge Go's ruling on this issue was clearly erroneous or contrary to applicable law and should be overturned. Accordingly, the Order's ruling stating that TNB's fifth affirmative defense is not futile should be affirmed by this Court.

## CONCLUSION

In light of the foregoing, TNB hereby requests that this Court affirm Judge Go's Order in its entirety.

Dated: Mineola, New York
October 20, 2011

MELTZER, LIPPE, GOLDSTEIN & BREITSTONE, LLP

Douglas Levine, Esq. (DL-4920)
190 Willis Avenue
Mineola, New York 11504
(516) 747-0300
*Attorneys for Defendant*