LAW OFFICES
# MELTZER, LIPPE, GOLDSTEIN & BREITSTONE, LLP
190 WILLIS AVENUE, MINEOLA, NY 11501

*Douglas L. Levine, Esq.*
*(516) 747-0200 ext. 183*
*dlevine@meltzerlippe.com*

TELEPHONE: (516) 747-0300
FACSIMILE: (516) 747-0653
INTERNET: www.meltzerlippe.com

*Video Conference Facilities*

November 16, 2011

**Via Electronic Filing & U.S. Mail**
Honorable Marilyn D. Go
United States District Court
225 Cadman Plaza East
Brooklyn, New York 11201

    Re:   Calico Cottage, Inc. v. TNB, Inc.
           Civ. No. CV11-0336 (DLI)(MDG)
           MLG File No. 11808-00010

Dear Judge Go:

      This Firm represents Defendant TNB, Inc. ("TNB") in the above-referenced action. I write in opposition to Plaintiff Calico Cottage, Inc.'s ("Plaintiff") letter motion, dated November 11, 2011, seeking (i) an extension of fact discovery to December 30, 2011 and (ii) permission to reschedule four depositions previously scheduled by Plaintiff to take place in Florida from November 16, 2011 to November 18, 2011. This Court should deny Plaintiff's motion because Plaintiff voluntarily decided not to take the depositions it noticed and that TNB was prepared to attend. Plaintiff made the decision not to take these depositions after threatening, on November 7, 2011, to seek sanctions against TNB if it failed to appear for those depositions or refused to testify. See Ex. A. TNB informed Plaintiff in a November 11, 2011 e-mail that it planned on attending the depositions (even though the depositions were patently designed to substantially disrupt TNB's business by deposing all of the members of TNB's sales team and despite Plaintiff's refusal to pay the costs of TNB's counsel's attendance at the depositions pursuant to Local Civil Rule 30.1). See Ex. B. Plaintiff's decision not to take the depositions it noticed should, therefore, not be excused by this Court.

      TNB initially raised issue with Plaintiff's four scheduled depositions in a November 3, 2011 letter to Plaintiff's counsel that, among other things, requested Plaintiff's payment of TNB's counsel's costs pursuant to Local Civil Rule 30.1 and objected to the scope of the Rule 30(b)(6) deposition. See Ex. C. After I made several attempts to reach Plaintiff's counsel for a response to the requests for costs, Plaintiff's counsel replied on November 7, 2011 asking if the deponents, which include TNB's entire sales force, could fly to New York for the depositions. See Ex. D. Given the severe disruption to TNB's business that would occur if the four witnesses noticed for depositions were required to travel to New York to be deposed, I declined and asked



*Long Island's Business Law Firm* <sup>sm</sup>

MELTZER, LIPPE, GOLDSTEIN & BREITSTONE, LLP

for a definitive answer concerning the costs of the deposition.  See Ex. E.  As noted above, Plaintiff's counsel replied with a November 7, 2011 e-mail refusing to pay for the costs of the deposition and threatening TNB that "[a]bsent a protective order, if the witnesses fail to appear or refuse to testify, Calico will be entitled to its attorneys' fees and costs with respect to the depositions."  See Ex. A.  Accordingly, on November 8, 2011, TNB filed the motion for costs pursuant to Local Civil Rule 30.1 and/or a protective order concerning the depositions that is now before Your Honor.

Since a decision from the Court on TNB's November 8, 2011 motion was not likely before the November 16-18 depositions, and in light of Plaintiff's threat to seek attorney's fees and costs against TNB for any refusal to attend the depositions, TNB prepared to attend.  However, on Thursday, November 10, 2011 at 5:16 p.m., Plaintiff's counsel suddenly changed course, requesting an extension of discovery with an adjournment of the depositions in light of the proposed protective order and certain related discovery disputes.  See Ex. F.  One discovery dispute concerned TNB's document production and was resolved during a November 15, 2011 telephone conference before the depositions were scheduled to take place.  The other dispute was raised by TNB's motion for a protective order and only concerned the scope of the Rule 30(b)(6) deposition; only one of the four scheduled depositions.

Plaintiff never advised this Court that, on November 11, 2011, TNB's counsel sent an e-mail proposing a procedure for addressing these issues while still adhering to the depositions scheduled by Plaintiff.  See Ex. B.  As explained therein, TNB had already arranged for one of the deponents to travel back to Florida for the depositions and TNB expected to proceed as scheduled even if the Court was unable to address TNB's motions before the depositions.  See Ex. B.  The e-mail also explained that the dispute concerning the scope of the Rule 30(b)(6) deposition could be addressed by the Court either before the deposition or during the deposition in a telephone call pursuant to Local Civil Rule 37.3.  See Ex. B.  I followed up with an e-mail that same day reiterating TNB's intent to attend the depositions as scheduled.  See Ex. G.

By the time Plaintiff finally confirmed on November 14, 2011 that it was abandoning the depositions it noticed (see Ex. H), one of TNB's three sales team members had already interrupted a sales trip and travelled from Louisiana to Florida for his deposition.  TNB had also arranged for a second salesman to travel from Tennessee to Florida and the third member of the sales team was already in Florida for his deposition.  Thus, TNB did not use its outstanding motion concerning the depositions as an excuse to avoid the depositions and repeatedly advised Plaintiff that it was prepared to proceed with the noticed depositions.  See Exs. B and G.

In asking the Court to extend discovery deadline, Plaintiff seeks to disrupt TNB's business operations again by requiring that TNB's entire sales team appear for depositions sometime in late December.  Plaintiff's request to delay the completion of discovery is a tactic being pursued by Plaintiff to cause as much disruption to TNB while Plaintiff (i) tells TNB's

MELTZER, LIPPE, GOLDSTEIN & BREITSTONE, LLP

potential fudge customers that Plaintiff will get an injunction to stop TNB from selling them fudge if they do business with TNB (see Ex. I) and (ii) tries to destroy TNB by specifically seeking to convert TNB's nut customers (see Ex. J, Plaintiff's response to a request to admit the fact that Plaintiff's business plan includes converting TNB customers). Plaintiff's counsel has asserted that Plaintiff's threat to obtain an injunction should a potential customer buy fudge or fudge ingredients from TNB is proper notwithstanding this Court's April 15, 2011 Order denying Plaintiff's request for a preliminary injunction and holding that Plaintiff could not demonstrate irreparable harm as a matter of law.[1] See Ex. I. Accordingly, a decision by this Court that extends discovery and allows Plaintiff to willfully abandon its previously scheduled depositions only to reschedule them later will only serve to facilitate Plaintiff's plan to destroy TNB's business and the bad faith in which this matter is being pursued by Plaintiff. See Exs. I and J.

Furthermore, Plaintiff's reliance on the two discovery disputes as a basis for abandoning its depositions is misplaced. As discussed above, the discovery dispute concerning TNB's production of documents was resolved before the depositions were scheduled to take place. The other discovery dispute concerning TNB's objection to the scope of one of the four depositions scheduled by Plaintiff could have been resolved on a conference call with the Court as proposed by TNB. The issue of the scope of the 30(b)(6) notice also did not affect the three other scheduled depositions that sought testimony from TNB's sales team. Plaintiff's refusal to move forward with all four depositions on the basis of the aforementioned disputes should not be rewarded by this Court through an extension of discovery.

Finally, Plaintiff's motion mischaracterizes the discovery dispute concerning the scope of its Rule 30(b)(6) notice. First, TNB's November 3, 2011 letter did not object to "topics 1, 2 and 3" set forth in that notice, but instead, objected to the discussion of topics 1 and 3 set forth therein. See Ex. C. Topics 1 and 3 concern TNB's sale of fudge products before January 2011 and TNB's sale of fudge products on the Home Shopping Network, two topics that were discussed in detail at the August 4, 2011 deposition of David Brent. A copy of David Brent's transcript has been provided to Plaintiff and will be brought to the November 21, 2011 hearing for the Court's review. TNB's sale of fudge prior to the Agreement was discussed on pages 20, 26, 28 and 29 of the transcript and TNB's sale of fudge on the Home Shopping Network was discussed on pages 84-85 and 104 of the transcript. Plaintiff, thus, had ample opportunity to examine TNB on these issues. Plaintiff had also received a July 27, 2011 letter sent to Plaintiff by overnight mail enclosing TNB's Proposed Amended Complaint eight days before David Brent's deposition. See Ex. K. Consequently, this Court should strike topics 1 and 3 from Plaintiff's 30(b)(6) notice as improper.

Thank you for your attention to this matter.

---

[1] Plaintiff's contention that a permanent injunction is still possible ignores this Court's holding on irreparable harm and the fact that this action will not be resolved until after the agreement at issue expires on January 22, 2012, rendering a permanent injunction moot.

MELTZER, LIPPE, GOLDSTEIN & BREITSTONE, LLP

Respectfully submitted,

*[signature]*

Douglas L. Levine (dl-4920)

DLL:tc
cc: Lloyd McAulay, Esq.
   Cowan, Liebowitz & Letman, P.C.
   *Attorneys for Plaintiff*
   1133 Avenue of the Americas
   New York, New York 10036
   (212) 790-9200