LAW OFFICES

# MELTZER, LIPPE, GOLDSTEIN & BREITSTONE, LLP

190 WILLIS AVENUE, MINEOLA, NY 11501

TELEPHONE: (516) 747-0300

FACSIMILE: (516) 747-0653

INTERNET: www.meltzerlippe.com

*Douglas L. Levine, Esq.*
*(516) 747-0200 ext. 183*
*dlevine@meltzerlippe.com*

*Video Conference Facilities*

January 11, 2012

**Via Electronic Filing & U.S. Mail**
Honorable Marilyn D. Go
United States District Court
225 Cadman Plaza East
Brooklyn, New York 11201

    Re:    <u>Calico Cottage, Inc. v. TNB, Inc.
              Civ. No. CV11-0336 (DLI)(MDG)</u>

Dear Judge Go:

       This Firm represents Defendant TNB, Inc. ("TNB") in the above-referenced action. TNB submits this letter motion to request: (1) leave to amend TNB's Answer; (2) an Order compelling Plaintiff Calico Cottage, Inc. ("Plaintiff") to produce all invoices or other documents evidencing Plaintiff's sales of raw nuts without selling fudge mix as part of the same transaction during the term of the agreement at issue in this action ("Agreement"); and (3) an extension of time for TNB to submit its expert report in light of Plaintiff's refusal to produce documents evidencing TNB's damages. TNB requests the foregoing relief in light of the recent December 15, 2011 testimony by Plaintiff's Vice President, Larry Wurzel, which revealed that Plaintiff has sold raw nuts to customers without selling fudge mix as part of the same transaction; a fact that Plaintiff previously denied by repeatedly misstating that Plaintiff only sold nuts as an inclusion for its fudge mix. Since the sale of raw nuts to customers is a part of TNB's business, any such sales by Plaintiff constitutes a violation of the non-compete and non-solicitation provision of the Agreement that Plaintiff contends is enforceable and TNB has the right to review documents evidencing these sales. TNB requested invoices or other documents evidencing these sales from Plaintiff along with Plaintiff's consent to TNB's filing of an Amended Answer to include additional allegations concerning these newly discovered nut sales. See <u>Ex. A</u>. Plaintiff refused to consent to the amendment notwithstanding that: (1) the amendment will not require any additional discovery (other than the production of documents already requested by TNB and previously ordered by this Court to be produced) and (2) Plaintiff will not be prejudiced or surprised by this amendment which entails changes or additions to just five paragraphs of TNB's Answer that consist of allegations previously made by TNB throughout the course of this litigation. Plaintiff also refused to produce the requested invoices, telling TNB to seek relief from this Court. See <u>Ex. B</u>.

**M**<sub>L</sub> **Meltzer Lippe**

*Long Island's Business Law Firm* ℠

MELTZER, LIPPE, GOLDSTEIN & BREITSTONE, LLP

Paragraph 3 (a)(ii) of the Agreement, which Plaintiff drafted and must therefore be construed strictly against it, states that Plaintiff shall not "[a]ttempt to reduce or eliminate the current business relationship" of TNB with any of TNB's customers during the term of the Agreement. Paragraph 4 of the Agreement states that "[e]ach party agrees to refrain from entering into the business of the other party, said business being set above as Calico Business and Nutty Bavarian Business." The Nutty Bavarian Business is defined in the Agreement as including "providing to retailers: (1) . . . ingredients for roasting and glazing nuts that enables retailers to sell roasted and glazed nuts to customers . . .". Plaintiff's sale of raw nuts during the term of the Agreement would irrefutably violate Paragraph 4 of the Agreement drafted by Plaintiff, as that sale would constitute a sale of a TNB product and a nut roasting and glazing ingredient. Plaintiff's sale of raw nuts to TNB's customers during the term of the Agreement would clearly violate Paragraph 3 (a) (ii) of the Agreement, as it would constitute an attempt to reduce or eliminate TNB's business relationship with its customers.

More than five months ago, on July 26, 2011, TNB requested documents from Plaintiff evidencing its sale of nuts during the term of the Agreement. See Ex. C. As it has done throughout this litigation, Plaintiff refused to provide the requested documents and forced TNB to seek an order from this Court requiring that document production. In support of its refusal to produce the requested documents, Plaintiff repeatedly represented that it only sold nuts as an inclusion for its fudge mix and claimed that documents evidencing these sales are irrelevant. **Your Honor disagreed and, on November 21, 2011, issued an Order stating that "[b]y December 8, 2011, plaintiff shall prepare a proposal to defendant regarding the production of documents concerning sales of raw nuts, which includes identifying customers and quantities sold from January 30, 2007 to present."** See Ex. D.

On December 8, 2011, Plaintiff produced a sample page of a report that listed certain nut sales by Plaintiff during the term of the Agreement (rather than all sales) and included the sale price, the invoice date and a short description of the product sold. Customer names were not included, but Plaintiff agreed to provide customer names if TNB would agree to accept the report as sufficient and treat it in accordance with a "Highly Confidential – Attorney's Eyes Only" designation.[1] TNB responded by, among other things, requesting any invoices or other documents evidencing how the nuts were shipped to see if Plaintiff's assertion that it only sold nuts as an inclusion for fudge mix was correct. See Ex. E. TNB has recently explained that the quantity of nuts sold must be clearly set forth so that TNB can calculate its damages. The current sample report does not include the quantity of nuts sold for many of the orders.

After Larry Wurzel admitted on December 15, 2011 that Plaintiff has sold nuts to customers without selling fudge as part of the same transaction, TNB reiterated its requests for invoices evidencing the sales of nuts without fudge mix, which clearly breach the Agreement. See Ex. F. Plaintiff responded by continuing to refuse to produce

---

[1] TNB cannot attach the report to this motion due to Plaintiff's confidentiality designation.

566236-1                                2

MELTZER, LIPPE, GOLDSTEIN & BREITSTONE, LLP

these documents. See Ex. B. When I spoke with Plaintiff's counsel in a good faith effort to resolve this dispute, Ms. Collins insisted that TNB's request was unreasonable and did not relate to TNB's counterclaim for breach of contract because she contends that this counterclaim only concerns Plaintiff's internet activities.

While TNB believes that its breach of contract claim is broad enough to encompass Plaintiff's breach of the Agreement through its nut sales, Plaintiff has disagreed, necessitating the burdening of this Court with this motion. TNB therefore requests leave to amend its Answer to include additional allegations concerning these newly discovered nut sales. Surprise and prejudice are not issues here, as TNB has repeatedly argued that Plaintiff's sale of raw nuts constitutes a breach of the Agreement. TNB's knowledge about the extent of Plaintiff's raw nut sales and ability to set forth allegations on this issue in its Answer was previously thwarted throughout this action by: (1) Plaintiff's refusal to produce responsive documents requested by TNB on this issue for more than five months and (2) Plaintiff's repeated misleading statements to TNB and to this Court that it only sold nuts as an inclusion for its fudge mix. Now it is clear that Plaintiff does not sell nuts simply as an inclusion for its fudge mix. Instead, Plaintiff sells raw nuts to customers and those customers can use the nuts that they purchase for whatever purpose they desire. This nut sale directly competes with TNB's business, as TNB sells raw nuts to its customers as well. See Ex. G, sample invoice to a TNB customer who purchases raw nuts. Plaintiff's sale of raw nuts to any customer, especially a customer of TNB, breaches the non-compete and non-solicitation provision of the Agreement and TNB should be granted leave to include allegations about these breaches of the Agreement in its Answer.

Moreover, TNB's proposed amendment will not prejudice Plaintiff by requiring any unexpected document production, as TNB is only seeking documents that it has previously requested from Plaintiff. Unfortunately, Plaintiff has obstinately refused to produce these documents on several occasions. Therefore, TNB also respectfully requests an Order from this Court instructing Plaintiff to: (1) produce all invoices or other documents evidencing its sale of raw nuts without selling fudge mix as part of the same transaction and (2) amend its report of all raw nut sales to include the quantity of nuts sold in each order for the period plaintiff was previously directed by this Court to cover. Furthermore, since Plaintiff has withheld these documents which TNB needs to calculate its damages, TNB requests an extension of time to submit its expert report on damages.

Thank you for your attention to this matter.

Respectfully submitted,

Douglas L. Levine (dl-4920)

DLL:tc

cc: Lloyd McAulay, Esq.
     Cowan, Liebowitz & Letman, P.C.